NOS. 4-01-1045, 4-01-1120 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH JUDICIAL DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellant ) Circuit Court of

) Livingston County

MARIO GRANADOS, ) No. 01DT129

Defendant-Appellee. ) 

      ) Honorable

) Randolph R. Spires,

) Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:  

In September 2001, defendant, Mario Granados, was arrested for driving under the influence of alcohol (DUI) in violation of section 11-501 of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501 (West 2000)).  Pursuant to section 6-208.1(a)(2) of the Code, defendant’s driver’s license was summarily suspended for a period of three months.  625 ILCS 5/6-208.1(a)(2) (West 2000).  Defendant filed a petition to rescind the statutory summary suspension, which the trial court granted.  The State appealed (No. 4-01-1045).  Defendant then filed a motion to quash arrest and suppress evidence, which the trial court also granted.  The State appealed (No. 4-01-1120).  The two appeals were consolidated herein.  

The State argues that the trial court erred in granting defendant's petition to rescind the statutory summary suspension and motion to quash and suppress.  We affirm.

I. BACKGROUND

In September 2001, the Illinois State Police were conducting a roadside check in Dwight, Illinois.  Defendant and two passengers were traveling in defendant's pickup truck to Streator from Kankakee where they had been hunting that day.  Mark L. Scott, a police officer with the Village of Dwight, was assisting the Illinois State Police with the roadside check.  Officer Scott stopped defendant's vehicle and asked for defendant's driver's license, registration, and proof of insurance.  Defendant produced the items.  After checking the validity of each, Officer Scott returned the items to defendant and told him that he was free to go.

As defendant was pulling away, Officer Scott told Trooper Jordan, who was also working the roadside check several feet in front of Officer Scott, to stop defendant's vehicle.  Officer Scott saw three shotgun cases in the bed of defendant's truck which, to the officer, appeared to contain shotguns.  Officer Scott wanted the vehicle stopped again to obtain defendant's firearm owner's identification (FOID) card.

When Officer Scott approached defendant to request the card, he smelled alcohol.  When asked, defendant stated that he did not have any open liquor in the vehicle.  Officer Scott asked for, and was granted, consent to search the vehicle, where he found three open cans of beer.  The officer asked defendant and his passengers to exit the vehicle and requested defendant to submit to field sobriety tests.  Officer Scott then confirmed the validity of defendant's FOID card and placed him under arrest for DUI.  Defendant submitted to the breathalyzer test, which registered .114.

On October 4, 2001, defendant filed a request for rescission of the statutory summary suspension alleging the arresting officer lacked reasonable grounds to believe that defendant was operating a vehicle under the influence of alcohol.  Defendant contends that the roadside check was complete at the time the officer allowed defendant to drive away and any subsequent detention of the vehicle was improper.  The State claimed that the subsequent stop of defendant's vehicle was a continuation of the roadside check and was therefore proper.

On November 1, 2001, the trial court granted defendant's request finding that, at the time of the initial stop, Officer Scott did not have any suspicion or probable cause that a crime had been or was about to be committed.  The trial court found that once defendant was told to proceed, the purpose of the stop had been completed.  The court further found that because the officer testified that there was nothing that he observed that would indicate to him that there was anything unlawful or illegal about the presence of the guns, the subsequent detention of defendant's vehicle was unlawful.

On November 6, 2001, defendant filed a motion to quash arrest and suppress evidence.  At the hearing on defendant's motion, the parties stipulated that the court should consider the evidence and argument from the hearing on defendant's petition to rescind the statutory summary suspension.  No new evidence was presented.  The trial court accepted the stipulation and granted defendant's motion relying on its findings from the rescission hearing.  This appeal followed.      

II. ANALYSIS 

In a statutory summary suspension hearing, the burden of proof is on the motorist to establish a 
prima
 
facie
 case for rescission, and to prevail, the trial court must find defendant has satisfied his burden of proof by a preponderance of the evidence.  
People v. Huisinga
, 242 Ill. App. 3d 418, 421, 610 N.E.2d 168, 171 (1993).  Whether a defendant has met this burden of proof is a question of fact for the trial judge, and this determination will not be overturned on review unless it is against the manifest weight of the evidence; that is, unless an opposite conclusion is clearly evident from the record.  
Huisinga
, 242 Ill. App. 3d at 421, 610 N.E.2d at 171.  A trial court's ruling on a motion to quash the arrest and suppress evidence will be disturbed only if the decision is manifestly erroneous.  
People v. Gacho
, 122 Ill. 2d 221, 237, 522 N.E.2d 1146, 1154 (1988).  However, an issue is a legal one subject to 
de
 
novo
 review when neither the facts nor the credibility of the witnesses is questioned.  
People v. Mourecek
, 208 Ill. App. 3d 87, 91, 566 N.E.2d 841, 844 (1991).  Nothing in the record suggests that the parties dispute the facts; therefore, our review is 
de
 
novo
.  

On appeal, the State argues that the officers had the authority to stop defendant a second time because the subsequent stop was still part of the roadside check.  Defendant does not dispute the officers' authority to conduct the roadside check, but disputes the officers' authority to stop defendant without probable cause once he was released from the roadside check.

Our supreme court has held that temporary roadblocks which serve to apprehend or deter drunk drivers do not violate the guarantee to be free from unreasonable searches and seizures as set forth in the fourth and fourteenth amendments of the Constitution of the United States.  
People v. Bartley
, 109 Ill. 2d 273, 285, 486 N.E.2d 880, 885 (1985).  The court held that the public's interest of removing intoxicated drivers from the roadways outweighs the minimal intrusion of detaining a motorist temporarily.  
Bartley
, 109 Ill. 2d at 285, 486 N.E.2d at 885.

However, the question posed here is whether the field officers have the authority to recheck the motorist once the purpose of the initial check has been completed and the officers have told the motorist that he is free to go.  Upon the initial roadside check, the officers found nothing to indicate that defendant had committed or was committing a traffic or criminal offense.  The arresting officer testified that upon his initial stop of defendant's vehicle, he did not suspect defendant of driving under the influence.  Because defendant produced a valid driver's license, registration, and proof of insurance and because the officer did not find any violations, defendant was allowed to proceed through the roadside check.  We find that at that point, the purpose of the stop had been completed.  Any detention of defendant after that point required a reasonable or articulable suspicion of illegal activity.  
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

The State cites 
People v. Ross
, 289 Ill. App. 3d 1013, 1018, 682 N.E.2d 87, 90 (1997), as support for its argument that inquiry into the presence of a weapon in a vehicle is proper at a traffic stop.  We find 
Ross
 clearly distinguishable from the issues presented here.  In 
Ross
, the defendant was stopped for running a red light.  The only identification that the defendant could produce was a FOID card.  Based upon the presentation of this card, the officer asked the defendant if there was a gun in the vehicle.  The defendant said that there was, so the officers searched the vehicle and found a pistol in the backseat.  The defendant moved to quash the arrest and suppress the evidence.  The appellate court affirmed the trial court's denial of the defendant's motion, finding that the production of the FOID card as identification created an independent basis to continue and expand the initial 
Terry
 stop.

The court reasoned that the officer's safety during the stop justified the gun-related questioning and search.  It was only reasonable for the officers to be concerned about the whereabouts of any weapons especially since a passenger, who was sitting inside the vehicle during the stop, would have access to whatever weapon was inside.  That is not the case here.

The arresting officer testified that he requested defendant be stopped again only after he saw what appeared to be cased shotguns in the bed of the truck.  However, the officer admitted that the guns were completely out of reach of defendant and all passengers.  He admitted that the guns were completely cased.  He admitted that there was no indication of any illegal activity.  The safety of the officers was not an issue as the guns were not accessible to the driver or the passengers.  Thus, 
Ross
 does not guide our analysis.

The State also cites 
People v. Edwards
, 285 Ill. App. 3d 1, 2-3, 673 N.E.2d 752, 753-54 (1996), to support its argument that the subsequent stop of defendant's vehicle was not improper.  In 
Edwards
, the police were conducting a roadside check similar to the one at issue here.  The defendant in 
Edwards
 was not wearing a seat belt at the time he was stopped so he was directed to the second staging area.  At the second staging area, the officers obtained evidence that the defendant was driving under the influence of alcohol.  On appeal, the court reversed the trial court's decision that the subsequent stop, which produced the evidence of DUI, was improper.  The appellate court held that the defendant was not stopped solely on the basis of a violation of the seat belt law, but was stopped on the basis of the roadside check; therefore, the arrest for DUI was the result of a proper seizure.  
Edwards
, 285 Ill. App. 3d at 3, 673 N.E.2d at 753-54.

Edwards
 is also distinguishable for two reasons.  First, the defendant in 
Edwards
 was asked to proceed to a subsequent area within the same roadside check.  He was not told that he could go and then subsequently stopped like defendant here.  The 
Edwards
 defendant was asked to pull forward to the second staging area.  
Edwards
, 285 Ill. App. 3d at 2, 673 N.E.2d at 753.  With that request, any reasonable person would understand that the roadside check was not yet complete.  However, in this case, defendant received his driver's license, registration, and proof of insurance back from the officer and was told that he was free to go.  At that time, any reasonable person would understand that the roadside check was complete.

Second, the defendant in 
Edwards
 was observedly in violation of the seat belt law.  This violation justified the extension of the roadside check for further inspection.  Therefore, the request to proceed to a subsequent area within the roadside check was justified.  
Edwards
, 285 Ill. App. 3d at 3, 673 N.E.2d at 753-54.  Here, the officers found no violations to justify an extension of the stop, nor a subsequent stop within the same roadside check.

The State also asks us to consider 
People v. Levens
, 306 Ill. App. 3d 230, 233, 713 N.E.2d 1275, 1278 (1999), to support its argument that an officer is justified in requesting a defendant's FOID card when the officer discovers a weapon in the defendant's possession.  In 
Levens
, the defendant was stopped by a conservation officer who, after seeing a shotgun lying in the seat of the vehicle, asked the defendant to produce his FOID card.  The defendant did not have a valid FOID card, or a valid driver's license, and was cited for both.  The trial court held that the stop was improper because the conservation officer did not see the defendant commit any violation of traffic or hunting laws.  The appellate court reversed and held that the officer's reason for stopping the vehicle (suspicion that the defendant was hunting illegally from his vehicle) was proper.  The officer had a reasonable suspicion that the defendant was engaged in illegal activity and was therefore justified in making the stop.  
Levens
, 306 Ill. App. 3d at 233, 713 N.E.2d at 1277.

The distinction between 
Levens
 and the case 
sub
 
judice
 is that the officer in 
Levens
 had a reasonable basis to stop the defendant.  As a result of the stop, the court found that it was proper for the officer to then request the defendant's FOID card.  
Levens
 does not address the issue presented here--whether an officer may stop a motorist upon seeing weapons solely for the basis of verifying the motorist's possession of a valid FOID card.  Thus, 
Levens
 is not dispositive.

The traffic stop here concluded when the officer returned to defendant his driver's license, registration, and insurance card and stated that defendant was free to go.  See 
People v. Brownlee
, 186 Ill. 2d 501, 514-15, 713 N.E.2d 556, 563 (1999) (the 
Terry
 stop ended when the police decided not to issue any citation and any search thereafter was improper).  Because the initial purpose of the stop (the roadside check) had been completed and because the officer lacked any reasonable suspicion of illegal activity, we find that the subsequent detention of defendant's vehicle without reasonable suspicion was improper.  We find that the mere presence of cased shotguns in the bed of a pickup truck does not constitute a reasonable or articulable suspicion of illegal activity.  Therefore, we affirm the trial court's orders granting defendant's request to rescind the statutory summary suspension and defendant's motion to quash arrest and suppress evidence.

III.  CONCLUSION

For the reasons stated, we affirm the trial court’s order granting defendant’s petition to rescind the statutory summary suspension and defendant's motion to quash arrest and suppress evidence.

Affirmed.

KNECHT and COOK, JJ., concur.