THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SCOTT W. HACKER, Defendant-Appellant.

Fourth District   No. 4—08—0422

Opinion filed February 18, 2009.

Jack C. Vieley, of Bloomington, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino,

Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Defendant, Scott W. Hacker, appeals the trial court's denial of his petition to rescind his statutory summary suspension. We affirm.

## I. BACKGROUND

On March 16, 2008, police officers arrested defendant for driving under the influence of alcohol (DUI) and gave him a copy of the notice of statutory summary suspension. In April 2008, defendant filed a petition to rescind the statutory summary suspension. The petition alleged that the police stopped defendant's vehicle at an illegal "drug[-] interdiction checkpoint," forced him from the vehicle, and forced him to perform an illegal field-sobriety test. Defendant asserted that stopping his vehicle at an illegal drug-interdiction checkpoint violated his fourth-amendment rights, thereby rendering the statutory summary suspension unlawful and improper. Defendant also filed a motion to suppress evidence on the same grounds.

On April 30, 2008, the trial court held a hearing on defendant's petition to rescind the statutory summary suspension.

Defendant testified that on March 16, 2008, at approximately 1 a.m., he left downtown Bloomington to return to his parents' house. Defendant began driving to his parents' house by way of "North 51." Defendant testified he was obeying the traffic laws and was not speeding, driving erratically, or crossing the centerline. At the intersection of Orlando and North 51, defendant noticed that the traffic signals were flashing red. Defendant was in the right lane and drove up to the traffic line "as a normal stop" when he was approached by a police officer. Defendant testified the officer instructed him to stop. Officers in the left lane walked up to him and said "[W]e're doing a drug check point and we want you to pull on up." Defendant testified he pulled up and talked to the next officer, who told defendant to move his vehicle to the side of the road. When asked if that officer also told defendant he was looking for "miscellaneous criminal activity," defendant testified "Yes, he did." Defendant then testified:

> "After he had stopped me, he, I asked him what he was doing? And he said, drug checkpoint, miscellaneous activity and that I was under suspicion of drunk driving."

Defendant testified he had no prior knowledge—by way of newspaper article or radio announcement—of the drug-interdiction checkpoint. Defendant did not recall seeing any warning signs on the road alerting to a "[d]rug checkpoint" or "[c]riminal checkpoint" but admitted on cross-examination that such signs could have been there

and he might not have seen them. He also admitted he had never heard anything on the radio about "stop points" previously, he did not currently live in the Bloomington area, and did "[n]ot that often" read the local paper.

Defendant testified the officer had him perform various field-sobriety tests. Defendant admitted on cross-examination that he had been drinking that night. He also admitted he blew into a Breathalyzer machine, and the results were a 0.126.

Defendant testified that the officer arrested him for DUI and took defendant to jail, where he was able to post bond. After defendant bonded out, he received notice of summary suspension from the Secretary of State. Defendant's exhibit No. 1, admitted into evidence, is the notice of statutory summary suspension signed by the arresting officer and dated March 16, 2008.

Donna R. Hacker, defendant's mother, testified that she lived in Lexington, Illinois, and subscribed to the Pantagraph. Hacker never saw any articles or local notices about a "drug checkpoint" or "criminal[-]interdiction checkpoint." Hacker also testified she did not hear any notice on the radio about a "drug checkpoint." Defendant rested.

The State tendered the arresting officer's report, which the trial court admitted over defendant's objection. See 625 ILCS 5/2—118.1(b) (West 2006) ("The hearing may be conducted upon a review of the law[-]enforcement officer's own official reports; provided however, that the person may subpoena the officer").

The report, prepared by Sergeant Jeff Gaither, provided in part as follows:

> "[W]hile working a roadside safety check[, I] observed a gray GMC pick[ ]up (Il. 254712D) fail to stop when I requested him to. I shined the light and got him to stop. I approached the driver[']s side window and spoke to the driver. He stated he did not understand what we wanted him to do. I observed he had very red, glassy eyes and a moderate odor of alcohol beverage on his breath as he spoke. He presented an Illinois driver's license showing him to be Scott W. Hacker. I asked Mr. Hacker to park his truck and walk with me to my [s]quad car."

The report further provided that defendant had poor balance and swayed as he walked. Defendant admitted having had a few beers. Sergeant Gaither had defendant perform field-sobriety tests and a portable breath test, after which Sergeant Gaither arrested defendant for DUI. Sergeant Gaither read the warning to motorist to defendant and defendant consented to "a RBT" test, the results of which were a 0.126. Sergeant Gaither issued an "immediate notice of summary

suspension with a receipt to drive." The vehicle was inventoried and towed. Sergeant Gaither read defendant his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), interviewed him, and then transported him to the county jail.

On May 12, 2008, the trial court entered an order denying the petition to rescind the statutory summary suspension. The court noted that defendant had the burden of establishing a *prima facie* case for rescission. The court concluded that defendant had not proved, by a preponderance of the evidence, that "the stop was an illegal drug[-] interdiction checkpoint." Specifically, the court found that defendant only presented as evidence his own "vague testimony" that the officers were checking for drugs, miscellaneous criminal activity, and suspicion of drunk driving. Defendant failed to present any evidence that he was questioned about drugs, that drug-sniffing dogs were present, or any other evidence to specifically show that this was an illegal drug-interdiction checkpoint. The court noted that the officer's report showed the checkpoint was a roadside safety check. Finally, the court noted that defendant failed to stop when requested, which gave the officers an additional basis to stop defendant's vehicle.

On June 3, 2008, defendant filed a motion to reconsider. Defendant asserted that the State had only recently provided him with a recording of the traffic stop. Over the State's objection, the trial court agreed to watch the recording of the stop. That recording, contained in the record on appeal, shows the stop from the point when defendant began the field-sobriety tests until the officer and defendant arrived at the jail. The recording does not show the initial encounter between defendant and the officers at the checkpoint.

On June 6, 2008, the trial court entered an order stating that after reviewing the recording, the court found nothing to prove to the court that it was an illegal drug-interdiction checkpoint or lack of probable cause for the stop. The court denied the motion to reconsider.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

In a statutory summary suspension hearing, the defendant motorist bears the burden of proof to establish a *prima facie* case for rescission. *People v. Granados*, 332 Ill. App. 3d 860, 862, 773 N.E.2d 1272, 1274 (2002). The defendant must satisfy his burden of proof by a preponderance of the evidence. *Granados*, 332 Ill. App. 3d at 862, 773 N.E.2d at 1274. After the defendant establishes a *prima facie* case, the burden shifts to the State to come forward with evidence justifying the suspension. *People v. Smith*, 172 Ill. 2d 289, 295, 665 N.E.2d 1215,

1217-18 (1996). Generally, this court will reverse a trial court's judgment on a petition to rescind a statutory summary suspension only if it is against the manifest weight of the evidence. *People v. Fonner*, 385 Ill. App. 3d 531, 539, 898 N.E.2d 646, 653 (2008). Recently, however, the Illinois Supreme Court applied a two-part standard of review in an appeal of a petition to rescind. In *People v. Wear*, 229 Ill. 2d 545, 561-62, 893 N.E.2d 631, 641 (2008), the supreme court held that the reviewing court will defer to factual findings but will review *de novo* the ultimate determination of whether the petition to rescind should be granted.

### B. Trial Court Did Not Err by Denying Petition To Rescind

By statute, the grounds upon which the petition to rescind a statutory summary suspension may be based are generally limited to the following: (1) whether the motorist was under arrest for DUI; (2) whether the arresting officer had reasonable grounds to believe that the motorist was in physical control of a vehicle upon a highway while under the influence of alcohol, drugs, or both; (3) whether the motorist refused to submit to chemical testing after being advised that such refusal would result in a statutory summary suspension of driving privileges; and (4) whether the motorist submitted to chemical testing and had an alcohol concentration of 0.08 or more. See 625 ILCS 5/2—118.1(b) (West 2006). "In addition to the statutory grounds for rescinding a summary suspension (625 ILCS 5/2—118.1 (West 2006)), a suspension may be rescinded where the stop of the defendant's vehicle was improper." *People v. Paige*, 385 Ill. App. 3d 486, 489, 896 N.E.2d 879, 882 (2008).

A seizure under the fourth amendment occurs when a vehicle is stopped at a roadblock or checkpoint. *People v. Wells*, 241 Ill. App. 3d 141, 143, 608 N.E.2d 578, 581 (1993); *People v. Bartley*, 109 Ill. 2d 273, 280, 486 N.E.2d 880, 883 (1985) (not all roadblocks constitute a *per se* violation of the fourth amendment). Relevant factors for determining whether a roadblock or checkpoint is constitutional include the following: "(1) the presence of procedural guidelines; (2) the absence of discretion in individual field officers; (3) some indication to the public of the official nature of the operation; and (4) selection of the site by supervisory personnel." *Wells*, 241 Ill. App. 3d at 144, 608 N.E.2d at 581 (holding that safety-check roadblock did not violate the fourth amendment).

The overriding concern is whether the roadblock or checkpoint is reasonable. *Bartley*, 109 Ill. 2d at 280, 486 N.E.2d at 883. Temporary roadblocks for the purpose of checking driver's licenses and for drivers under the influence do "not violate the fourth amendment because

the State ha[s] a compelling interest in reducing alcohol-related accidents which outweigh[s] the minimal intrusion on motorists." *Wells*, 241 Ill. App. 3d at 143-44, 608 N.E.2d at 581. However, roadblocks "whose primary purpose was to detect evidence of ordinary criminal wrongdoing," such as roadblocks with the primary purpose of indicting illegal narcotics, violate the fourth amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32, 41, 48, 148 L. Ed. 2d 333, 343, 347-48, 121 S. Ct. 447, 454, 458 (2000).

On appeal, defendant argues the roadblock in question was an illegal drug-interdiction checkpoint. In support thereof, defendant points to his testimony that the arresting officer told defendant, "[W]e're doing a drug check[ ]point and we want you to pull on up." However, the trial court concluded that defendant had not met his burden of presenting a *prima facie* case for rescission. The court found "vague" defendant's testimony that the officers were checking for drugs, miscellaneous criminal activity, and suspicion of drunk driving. The court specifically noted the lack of any other evidence to show that the roadblock was an illegal drug-interdiction checkpoint. Even after admission and consideration of the recording of the traffic stop, the court concluded no evidence demonstrated the roadblock was an illegal drug-interdiction checkpoint or that probable cause for the stop was not shown.

Whether a defendant has met his burden of proof is a question of fact for the trial court. *People v. Tibbetts*, 351 Ill. App. 3d 921, 927, 815 N.E.2d 409, 414 (2004). "The burden shifts to the State only if the trial court finds the motorist's testimony to be credible." *Tibbetts*, 351 Ill. App. 3d at 927-29, 815 N.E.2d at 414-15 (affirming the trial court's dismissal of the defendant's petition to rescind for failure to establish a *prima facie* case, noting that although the defendant presented some evidence, the law requires credible evidence). Clearly here, the trial court did not find defendant's testimony credible or entitled to any weight. See, *e.g.*, *People v. Orth*, 124 Ill. 2d 326, 340-41, 530 N.E.2d 210, 217 (1988) (noting that when the motorist seeks rescission on the basis that the test results were unreliable, the motorist must present credible testimony to call into doubt the test results before the burden will shift to the State to lay a proper foundation for the admission of the test results). This court will not substitute its judgment for that of the trial court when the trial court's findings are based on credibility of the witnesses or involve the evidence's weight. See *People v. Tucker*, 245 Ill. App. 3d 161, 165, 614 N.E.2d 875, 877 (1993) (noting that the defendant can establish a *prima facie* case by presenting evidence that, if believed, would establish the issue in question). Therefore, the trial court did not err by denying defendant's petition to rescind his statutory summary suspension.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER and POPE, JJ., concur.