2016 IL App (4th) 150572

NO. 4-15-0572

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| JESS M. REYNOLDS, | ) | No. 15DT351 |
|     Defendant-Appellee, | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Chris Perrin, |
| | ) | Judge Presiding. |

JUSTICE POPE delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1    On May 5, 2015, defendant, Jess M. Reynolds, was pulled over for driving 61 miles per hour in an area with a 35-mile-per-hour speed limit. After an investigation and defendant's refusal to submit to a Breathalyzer, police officer Ricky Cathers concluded Reynolds was under the influence of alcohol and charged her with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2014)). As part of the charge, defendant's driver's license was summarily suspended for 12 months (625 ILCS 5/11-501.1(d), 11-501.9(f)(1) (West 2014)).

¶ 2    Defendant petitioned to rescind her statutory summary suspension (petition to rescind), arguing, among other claims, the police officer lacked jurisdiction to arrest her. The circuit court found the officer lacked jurisdiction and granted the petition to rescind. The circuit

court reserved ruling on the remaining issues in the case pending an appeal on jurisdiction. This appeal followed.

¶ 3                                    I. BACKGROUND

¶ 4          On May 5, 2015, defendant was pulled over for speeding. At the time, defendant was headed northbound on Sixth Street, between the intersections of Linton Avenue and Stanford Avenue. Sergeant Ricky Cathers, of the Southern View police department, was using a radar gun to check for speeding cars. He was parked facing west at 2754 South Sixth Street, in a parking lot between Linton and Stanford Avenues. He detected defendant's car at the intersection of Linton Avenue and Sixth Street traveling 61 miles per hour in an area with a 35-mile-per-hour speed limit. Cathers pulled defendant over just north of the intersection of Stanford Avenue and Sixth Street.

¶ 5          During the stop, Cathers smelled alcohol coming from defendant's car. He then discovered an empty bottle of whiskey in defendant's car. Cathers ordered defendant out of the car and asked her to perform several field sobriety tests. He conducted a portable breath test (PBT) on defendant, which detected a 0.231 alcohol concentration in her breath. Based on defendant's results on the PBT and field sobriety tests, Cathers believed defendant was under the influence of alcohol. Cathers asked defendant to submit to a Breathalyzer. Defendant never successfully performed the Breathalyzer. Cathers believed defendant was refusing to blow. Cathers arrested defendant for DUI based on the PBT and field sobriety test results. As a result of the arrest, defendant's license was summarily suspended (625 ILCS 5/11-501.1(d), 501.9(f)(1) (West 2014)).

¶ 6          On May 27, 2015, defendant filed a petition to rescind her statutory suspension, arguing, in part, her arrest was improper. Specifically, defendant challenged Cathers' jurisdiction to arrest her because Southern View's municipal boundary did not encompass the northbound

lane of Sixth Street. (Apparently, the southbound lanes of Sixth Street in the vicinity of where defendant's speed was clocked is in Southern View.) Defendant did not challenge her speeding as a basis for the initial stop.

¶ 7        A hearing on the petition to rescind was held on June 26, 2015. Defendant testified to what happened after she was pulled over. Cathers testified regarding his position, jurisdiction, and the stop itself. Cathers was initially positioned in a lot between Stanford and Linton Avenues. He first detected defendant speeding northbound at the intersection of Linton Avenue and Sixth Street. He pulled defendant over just north of the intersection of Stanford Avenue and Sixth Street. Cathers testified he believed he was within the corporate bounds of Southern View. Defendant also introduced a map purporting to depict the corporate bounds of Southern View. The circuit court allowed the map for testimonial purposes but not as an authoritative map on the corporate bounds of Southern View.

¶ 8        At the conclusion of the hearing, the circuit court took the petition under advisement and allowed the parties to submit "whatever argument you want to submit to [the court] *** whether or not it includes an affidavit from someone on jurisdiction." On June 29, 2015, defendant filed an affidavit from the Springfield zoning administrator to prove the northbound lane of Sixth Street was not within the bounds of Southern View. The State filed a written response. In its response, the State addressed Cathers' jurisdiction to make an arrest, stating he had authority to arrest petitioner within an adjoining municipality in the county, citing *People v. Kirvelaitis*, 315 Ill. App. 3d 667, 734 N.E.2d 524 (2000). It also cited the Springfield ward map to show petitioner was at least arrested in an adjoining municipality. Springfield Ward Map, *available* at http://www.sangamoncountyclerk.com/Elections/Information/ documents/WardFinal_20140623.pdf (last visited May 9, 2016). On July 2, 2015, the court granted defendant's petition to rescind, finding Cathers lacked jurisdiction to arrest defendant. In

its order, the court specifically found the entire incident and arrest occurred outside the bounds of Southern View. The order stated the arrest occurred in Springfield.

¶ 9        The State immediately filed a motion to reconsider. At a hearing on the motion, the State mentioned defendant's speed at the time of the stop constituted a Class B misdemeanor, and Cathers therefore had jurisdiction to arrest defendant pursuant to section 107-4 (a-3)(2) of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/107-4(a-3)(2) (West 2014)) (arrest statute). The circuit court denied the motion to reconsider. For purposes of the motion to reconsider, the circuit court assumed the arrest occurred in Springfield. In denying the motion to reconsider, the circuit court considered sections 7-4-7 and 7-4-8 of the Illinois Municipal Code (Municipal Code), pertaining to territory, and section 107-4(a-3) of the Criminal Procedure Code. pertaining to arrest:

> "The territory which is embraced within the corporate limits of adjoining municipalities within any county in this State shall be a police district." 65 ILCS 5/7-4-7 (West 2014).
>
> "The police of any municipality in such a police district have full authority and power as peace officers and may go into any part of the district to exercise that authority and power. For these purposes the mayor of any municipality in the district, and the chiefs of police therein, shall use the police forces under their control anywhere in the district." 65 ILCS 5/7-4-8 (West 2014).
>
> "Any peace officer employed by a law enforcement agency of this State may conduct temporary questioning pursuant to Section 107-14 of this Code and may make arrests in any jurisdiction within this State: (1) if the officer is engaged in the investigation of

- 4 -

criminal activity that occurred in the officer's primary jurisdiction and the temporary questioning or arrest relates to, arises from, or is conducted pursuant to that investigation; or (2) if the officer, while on duty as a peace officer, becomes personally aware of the immediate commission of a felony or misdemeanor violation of the laws of this State ***. While acting pursuant to this subsection, an officer has the same authority as within his or her own jurisdiction." 725 ILCS 5/107-4(a-3) (West 2014).

The court interpreted these statutes together, in conjunction with legislative history, and concluded the arrest statute (725 ILCS 5/107-4(a-3) (West 2014)) limited police authority under the statutes on territorial jurisdiction (65 ILCS 5/7-4-7, 7-4-8 (West 2014)). It found a police officer could not make an arrest in an adjoining municipality unless the officer satisfied one of the enumerated conditions under the arrest statute. It denied the motion to reconsider, finding the officer was outside his jurisdiction when he made the stop. The court reserved ruling on the remaining issues in the case pending an appeal on jurisdiction. This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11        The State argues the circuit court erred in granting the petition to rescind the statutory summary suspension based on lack of jurisdiction. Defendant responds (1) the circuit court's decision was proper; or, alternatively, (2) the arrest occurred in unincorporated territory, which rendered the arrest invalid. We agree with the State and find the trial court erred in dismissing the case for lack of jurisdiction.

¶ 12                         A. Interpreting the Municipal Code

¶ 13        The circuit court's decision and the arguments of both parties on appeal rely on the interpretation of the statutes governing police jurisdiction in a given municipality. Defendant

- 5 -

contends "primary jurisdiction," under the arrest statute, refers to an officer's single municipality, while police authority in any adjoining municipality is constrained by the provisions of the arrest statute (725 ILCS 5/107-4(a-3)(1) (West 2014)). Defendant alternatively interprets the territorial jurisdiction sections of the Municipal Code to allow police to enter neighboring municipalities with the consent of the neighboring municipality's mayor or chief of police. The State maintains primary jurisdiction refers to either the entire county or at least contiguous municipalities, and the arrest section of the Criminal Procedure Code constrains police power beyond those boundaries.

¶ 14 The determination of police jurisdiction is an issue of statutory construction, which we review *de novo*. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11, 958 N.E.2d 1021. "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *Id.* The plain and ordinary meaning of the statutory language is the most reliable means of determining legislative intent. *People v. Jackson*, 2011 IL 110615, ¶ 12, 955 N.E.2d 1164. If "the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *Hall v. Henn*, 208 Ill. 2d 325, 330, 802 N.E.2d 797, 799 (2003).

¶ 15 Three different statutory sections quoted above (*supra* ¶ 9) apply to the issue in this case. Each section, by itself, appears susceptible to a single, plain, and ordinary interpretation. When considered together, each appears to address jurisdiction in a different way. When multiple legislative acts covering the same topic are at issue, the doctrine of *in pari materia* is applied. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422, 781 N.E.2d 249, 254-55 (2002). Under the doctrine, we consider all the statutes together "to produce a 'harmonious whole.' " *People v. Rinehart*, 2012 IL 111719, ¶ 26, 962 N.E.2d 444 (quoting *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555, 591 N.E.2d 427, 429 (1992)). We

construe the sections in light of the other relevant provisions to avoid rendering any portion of the statutes superfluous. *Land*, 202 Ill. 2d at 422, 781 N.E.2d at 255. We presume the legislature did not intend the acts to produce an absurd, inconvenient, or unjust result. *Id*. at 422, 781 N.E.2d at 255.

¶ 16 At common law, municipal and county police officers were without authority to make arrests outside the territorial limits of the political subdivision that appointed them to their office, unless in fresh pursuit of a suspected felon fleeing their jurisdiction. *People v Barwig*, 334 Ill. App. 3d 738, 747, 778 N.E.2d 350, 359 (2002) (citing *People v. Lahr*, 147 Ill. 2d 379, 382, 589 N.E.2d 539, 540 (1992)).

¶ 17 The legislature, as is its right, abrogated the common law when it amended the Municipal Code in 1999. See Pub. Act 91-0319 (eff. July 29, 1999). In a previous version of the Municipal Code, police officers were permitted to enter into any municipality in a police district to "suppress a riot, to preserve the peace, and to protect the lives, rights, and property of citizens." 65 ILCS 5/7-4-8 (West 1994). Under the amended version, the quoted text was deleted and police officers were given "full authority and power" to act in a police district. 65 ILCS 5/7-4-8 (West 2014).

¶ 18 Section 7-4-7 of the Municipal Code defines a single police district as territory which is embraced within the corporate limits of adjoining municipalities within the same county within this State (65 ILCS 5/7-4-7 (West 2014)). Section 7-4-8 of the Municipal Code describes the powers of a police officer within a police district (65 ILCS 5/7-4-8 (West 2014)). Notably, section 7-4-8 states "police of *any* municipality in such a police district" (emphasis added) (65 ILCS 5/7-4-8 (West 2014) suggesting more than one municipality falls within a single police district. Both sections appear under the division entitled "Territorial Jurisdiction." 65 ILCS 5/7-4-1 to 7-4-8 (West 2014). Under the plain and ordinary meaning of these sections, an officer has

- 7 -

"full authority and power" in his own municipality and any adjoining municipality in the same county. See *Barwig*, 334 Ill. App. 3d at 748, 778 N.E.2d at 359 (the defendant did not dispute sections 7-4-7 and 7-4-8 authorized what would otherwise be considered an extraterritorial arrest, but rather argued those sections were unconstitutional). See also *People v. Kirvelaitis*, 315 Ill. App. 3d 667, 671, 734 N.E.2d 524, 528 (2000) (police officer has authority to make an arrest outside his jurisdiction as long as the arrest is made in adjoining municipality in same county).

¶ 19       Section 7-4-8 of the Municipal Code endows officers with "full authority and power" (65 ILCS 5/7-4-8 (West 2014)) within *any* municipality in a police district. While defendant attempts to construct an argument that section 7-4-8 conflicts with the arrest statute, section 104-7(a-3) of the Criminal Procedure Code, we find no conflict. The arrest statute applies, as discussed below, to any jurisdiction in the State, whereas the Municipal Code provisions apply to extend the jurisdiction of police officers in a police district, defined as adjoining municipalities in the same county.

¶ 20       We also find Cathers had jurisdiction solely based on the arrest section of the Criminal Procedure Code, as discussed below.

¶ 21                         B. Interpreting the Arrest Statute

¶ 22       As stated above, the determination of police jurisdiction is an issue of statutory construction, which we review *de novo*. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11, 958 N.E.2d 1021. "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *Id.* The plain and ordinary meaning of the statutory language is the most reliable means of determining legislative intent. *People v. Jackson*, 2011 IL 110615, ¶ 12, 955 N.E.2d 1164. If "the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *Hall v. Henn*, 208 Ill. 2d 325, 330, 802

N.E.2d 797, 799 (2003).

¶ 23 On its face, section 107-4(a-3), quoted above at *supra* ¶ 9, affords police officers jurisdiction to effect an arrest in *any* jurisdiction as long as one of the enumerated provisions applies. 725 ILCS 5/107-4 (a-3), (West 2014). The plain and ordinary meaning of this section is readily understood.

¶ 24 Defendant urges us to consider the legislative history in our interpretation. We decline to enter into a protracted analysis of legislative history. "In the absence of ambiguity, we must rely on the plain and ordinary meaning of the words chosen by the legislature" without relying on extrinsic aids, like legislative history. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 426, 781 N.E.2d 249, 257 (2002). After finding a plain meaning interpretation of the arrest statute, considering the legislative history would be inappropriate.

¶ 25 C. Petition To Rescind

¶ 26 With the plain and ordinary interpretation of the arrest statute in mind, we now turn to the circuit court's decision granting the petition to rescind. In a petition to rescind, the defendant must establish a *prima facie* case for rescission by a preponderance of the evidence. *People v. Clayton*, 2014 IL App (4th) 130340, ¶ 17, 8 N.E.3d 1. The burden then shifts to the State to come forward with evidence to justify the suspension. *Id.* We will reverse the circuit court's factual findings only if they are against the manifest weight of the evidence. *People v. Hacker*, 388 Ill. App. 3d 346, 350, 902 N.E.2d 792, 795 (2009). The ultimate decision to grant or deny the petition, however, is reviewed *de novo*. *Id.*

¶ 27 We have no issues with the factual findings the circuit court made. Our determination is based exclusively on the authority provided under the arrest statute. The relevant portions of the arrest statute permit a stop outside an officer's primary jurisdiction if (1) the initial crime occurs within his jurisdiction or (2) an on-duty officer "becomes personally

aware of the immediate commission of a felony or misdemeanor violation of the laws of this State." 725 ILCS 5/107-4(a-3)(1), (2) (West 2014); see also *People v. Contreras*, 2011 IL App (2d) 100930, ¶ 35, 962 N.E.2d 1140 ("[t]he legislature wanted peace officers out of their own jurisdictions to be free to act should they find themselves faced with a newly committed crime").

¶ 28        The evidence in the record shows Cathers observed and stopped defendant outside the bounds of Southern View. As a result, section 107-4(a-3)(1) cannot serve as a basis for the stop. Defendant was pulled over for driving 61 miles per hour in an area with a 35-mile-per-hour speed limit, or 26 miles over the speed limit. Traveling 26 miles-per-hour over the speed limit is a Class B misdemeanor (625 ILCS 5/11-601.5(a) (West 2014)). Cathers personally observed the immediate commission of this offense. Neither party challenges defendant's speed. As a misdemeanor offense, Sergeant Cathers was justified in stopping defendant under the arrest statute. Finding the stop by Sergeant Cathers was justified and authorized under the arrest statute, the trial court erred in granting the petition to rescind.

¶ 29                    D. Findings on Remaining Issues

¶ 30        Defendant requests we consider the sufficiency of the evidence at the hearing and determine whether the State proved she refused to take a Breathalyzer. The circuit court is in the best position to assess credibility and make factual findings. *In re M.H.*, 196 Ill. 2d 356, 361, 751 N.E.2d 1134, 1139 (2001). Due weight is given to any inferences drawn from the factual findings by the circuit court. *People v. Wear*, 229 Ill. 2d 545, 561, 893 N.E.2d 631, 641 (2008). The court granted defendant's petition solely on jurisdiction. It made no factual determinations with respect to defendant's alleged refusal to submit to a Breathalyzer and drew no inferences. Instead, it chose to reserve ruling pending this appeal. Without any factual findings or inferences regarding the Breathalyzer or other matters going to the merits, we decline to make an independent assessment of the evidence. We remand the case to consider the remaining issues.

¶ 31                                    III. CONCLUSION

¶ 32            We reverse the circuit court's grant of the petition to rescind in light of the plain

language of the Municipal Code and the arrest statute. We remand the case for further

proceedings.

¶ 33            Reversed; cause remanded with directions.