# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Wachholtz*, 2013 IL App (4th) 110486

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN G. WACHHOLTZ, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-11-0486, 4-11-0812 cons. |
| Filed | April 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions and sentence for driving without a rear registration light, driving while his license was revoked and unlawful possession of a controlled substance were upheld over his contention that the trial court erred in denying his motion to suppress the arresting officer's testimony, notwithstanding the fact that the State Police violated the statute requiring that the recording of the traffic stop and arrest be retained until the case against defendant was closed, since defense counsel did challenge the officer's testimony and the fact that the recording had been destroyed did not prejudice defendant in his presentation of a defense. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, Nos. 10-CF-249, 10-TR-4336, 10-TR-4337; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal          Michael J. Pelletier, Karen Munoz, and Catherine K. Hart (argued), all of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Patrick Delfino, Robert J. Biderman, and Aimee Sipes Johnson (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel          JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Appleton and Holder White concurred in the judgment and opinion.


**OPINION**

¶ 1          In April 2011, a jury convicted defendant, Stephen G. Wachholtz, of driving without a rear registration light (No. 10-TR-4337) (625 ILCS 5/12-201(c) (West 2010)), driving while his license was revoked (No. 10-TR-4336) (625 ILCS 5/6-303(a) (West 2010)), and unlawful possession of a controlled substance (less than five grams of a substance containing methamphetamine) (No. 10-CF-249) (720 ILCS 646/60(a) (West 2010)). In June 2011, the trial court sentenced him to 24 months' probation with 180 days in jail.

¶ 2          Defendant appeals, arguing the trial court erred in denying his motion to suppress the arresting officer's testimony relating to the stop. We affirm.


¶ 3                              I. BACKGROUND

¶ 4          On July 13, 2010, Illinois State Police Trooper Scott Ahrens stopped defendant's vehicle for not having a working rear registration (license plate) light. During the stop, Ahrens discovered defendant's driver's license had been revoked and arrested defendant. Ahrens issued defendant citations for the registration-light violation and for driving while his license was revoked. During an inventory search of the vehicle, Ahrens discovered a glass pipe containing burnt residue. The residue was later tested and found to contain methamphetamine. Ahrens' squad car had an operational digital video disc (DVD) recorder, which made a video and audio recording of the traffic stop and arrest.

¶ 5          Defendant failed to appear for his traffic cases on July 29, 2010. On August 3, 2010, the trial court issued a warrant for his arrest.

¶ 6          On September 30, 2010, the State charged defendant with unlawful possession of a controlled substance (less than 15 grams of a substance containing methamphetamine) (720 ILCS 570/402(c) (West 2010)). Thereafter, a warrant issued for defendant's arrest. Defendant was arrested on both warrants in New Mexico on October 19, 2010 (more than 90 days after the traffic stop and seizure of evidence from the vehicle). He was arraigned on November 23,

2010, following a preliminary hearing.

¶ 7 Following the State's December 14, 2010, request to the Illinois State Police for the recording of the traffic stop, the State informed defendant the police had recycled the DVD back into use on November 1, 2010.

¶ 8 On December 15, 2010, defendant filed a motion to suppress Ahrens' testimony relating to the stop, alleging his right of due process was violated. Defendant argued the police violated the recording retention requirement prescribed by section 14-3(h-15) of the Criminal Code of 1961 (Code) (720 ILCS 5/14-3(h-15) (West 2010)) when they destroyed the recording of his traffic stop and arrest. According to defendant's motion, pursuant to the statute, recordings made as part of an arrest may only be destroyed after a final disposition in the case and upon an order from the court.

¶ 9 On December 21, 2010, the State amended the charges to allege unlawful possession of less than five grams of methamphetamine (720 ILCS 646/60(a) (West 2010)).

¶ 10 During the February 10, 2011, hearing on defendant's motion to suppress, Ahrens testified he stopped defendant on July 13, 2010, for not having a rear registration light. Ahrens observed the registration light on defendant's vehicle was not functioning and the rear license plate was "flapping up and down" because it was not securely attached. Ahrens stated he had a functioning video recorder in his squad car, which recorded the stop. Ahrens also testified he had a microphone on his uniform and statements he and defendant made were captured by his squad car's recording device. After he arrested defendant for driving while his license was revoked, Ahrens made an inventory search of defendant's vehicle and discovered a small glass pipe containing burnt residue. Ahrens testified the stop, arrest, and search would have been captured on the video.

¶ 11 With regard to why the recording was destroyed, Ahrens testified it would have been reviewed by a supervisor, kept for 90 days, and then recycled. Specifically, Ahrens testified as follows:

"The supervisor reviews it. Upon their discretion, it's placed back onto the shelf of the DVD storage room per [Illinois State Police] policy. It's recycled after 90 days, placed back into circulation. If there was something of evidentiary value, it would have been placed in the evidence vault and kept and retained."

¶ 12 Defendant argued section 14-3(h-15) of the Code was specifically enacted to prevent police from destroying recordings of traffic stops especially in cases where an arrest is made. According to defendant, where an arrest is made, the plain language of the statute mandates the recording be kept until the case is over. The State argued defendant was not entitled to suppression.

¶ 13 The trial court denied defendant's motion to suppress and found "the legislature did not intend that every time somebody's arrested for driving on a revoked or suspended license that the State Police are to keep the recording. That's not my understanding of the statute." Further, the court found:

"The tape is not evidence like the, like the alleged pipe that was found. The tape is a recording; and it could be used for evidentiary purposes; and if it's deemed evidence, then, and I don't know who deems it evidence, but somebody gets to deem it evidence;

-3-

and then that person must save it until court ordered; but it's not really clear when a tape is deemed evidence and who has the authority to deem it evidence.

In any event, the remedy is not the suppression of everything because you still have the officer's independent knowledge of the stop, what he observed, what the conversations were, what he found. So I don't think that even if the tape was supposed to be saved according to the statute, which I'm not convinced that it was, but even if it was, I don't think that the officer is prohibited from testifying about what he personally observed from the vehicle, of the driver during the inventory search.

\* \* \*

So I don't think the remedy for a violation[,] if there is a violation of the statute[,] would be a suppression of everything that's found. So based upon that, the motion to suppress is denied."

That same day, the court granted the State's motion to consolidate defendant's two traffic cases with his criminal case.

¶ 14    On February 25, 2011, defendant filed a motion to reconsider, which the trial court denied. In denying that motion, the court stated the following:

"The [d]efendant will be given an opportunity to present evidence contrary to what [Ahrens] testifies to, and it would be for the jury to decide who's telling the truth and what factually happened. So it's not a situation where the defense is not being given an opportunity to present its case. \*\*\* I don't know that the remedy is to just deny any testimony that would be offered by the officer."

¶ 15    During defendant's April 25, 2011, trial, Ahrens testified he observed defendant's vehicle traveling southbound at approximately 1:22 a.m. on July 13, 2010, on Interstate 55 without an operational rear registration light. Ahrens initiated a traffic stop of the vehicle. When Ahrens asked defendant for his driver's license, defendant gave Ahrens a Missouri identification card. Ahrens ran his name and discovered defendant's license had been revoked in Missouri. As a result, Ahrens arrested defendant and placed him in the squad car. The State introduced into evidence, without objection, a certified copy of defendant's Missouri driving abstract, which showed defendant's license was revoked the date of his arrest.

¶ 16    Ahrens testified he then conducted an inventory search of defendant's vehicle prior to having it towed. During that search, Ahrens lifted up the armrest on the driver's side door and discovered an ashtray and what he described as a "little flap or little leather like pouch" containing a glass pipe. Based on his training and experience, Ahrens recognized the pipe as drug paraphernalia used for smoking crack or methamphetamine. The pipe had "some sort of like white and black burnt residue inside of it." Defendant told Ahrens it was not his pipe and he did not know it was in the car. Defendant also told Ahrens he "didn't even know that flap was there." However, Ahrens testified he never told defendant about the flap and defendant volunteered that detail himself. Although defendant told Ahrens he had just purchased the vehicle, it was already registered to defendant. Ahrens also noted there were regular plates on the vehicle and not temporary ones, which indicated to Ahrens defendant purchased the vehicle "some time" ago.

¶ 17　　　During cross-examination, the following colloquy took place between defendant's trial counsel and Ahrens:

"Q. [MR. MORGAN (defense attorney):] Now on this day when you are following [defendant] and it's early in the morning, is your car equipped with a video and audio recording device?

A. [AHRENS:] Yes, sir.

Q. What kind of device is that?

A. It's a DVD recorder.

Q. And what's the purpose of that device?

A. Captures everything that I'm doing and even when I'm not doing anything. It's on recording all the time.

Q. It's on 24/7?

A. Yes, sir.

* * *

Q. For this particular arrest of [defendant] on this date and time was your DVD functioning?

A. Yes.

Q. In terms of audio, does it also capture what people say?

A. Yes, sir.

Q. How does it do that?

A. I wear a microphone inside my shirt pocket here.

Q. So when you walk up to the car and say, [']good evening, do you know why I'm s[t]opping you,['] or whatever it is you say to them, that's being captured through the microphone on your shirt or inside your shirt and being relayed back to the recording device in your squad car?

A. That's correct.

Q. Also there's, there's a camera in front of the DVD device?

A. Yes. It records everything in front of the squad car.

Q. And in this particular case, did it record what was occurring as you testified to?

A. Yes, sir.

Q. And was the audio working fine?

A. I would assume it was. Yes, sir.

Q. Do you have that DVD to show to the jury today?

A. No, sir.

Q. Why is that?

A. Because it's already been recycled since this was July 13, 2010, that this occurred.

Q. Okay. Well, we have the pipe. Right?

A. Um-hum.

Q. That's the same date that the DVD was made and we have the pipe from July 2010.

A. Correct.

Q. Why don't we have the DVD? You say recycled, what do you mean?

A. It was put back into circulation. After 90 days, the DVD's put back into circulation, unless there's an evidentiary hold placed on it ***.

Q. So in terms of the DVD itself, it can't be kept [unless] you write on there[,] [']make sure to keep this DVD, it has a drug arrest['] or whatever reason on it?

A. I could have done it. Yeah.

Q. Could have asked that it be kept for evidence?

A. Sure."

¶ 18    Denise Hanley, a forensic scientist with the Illinois State Police Crime Laboratory, testified the residue from the pipe Ahrens recovered from defendant's vehicle tested positive for methamphetamine.

¶ 19    Defendant testified he had never seen the glass pipe prior to being shown it by Ahrens. Defendant testified he did not know what was inside the pipe. While defendant could not provide an exact date, he testified he purchased the vehicle "within that week" from a man in St. James, Missouri, for $500. According to defendant, he was able to get regular license plates within that week. Defendant testified he cleaned the interior of the vehicle after he purchased it, but did not look in the armrest.

¶ 20    During closing argument, defendant's trial counsel referenced the recording of the traffic stop and stated the following:

"Let's go to the videotape. I hate to belabor all these points; but every point just shows how weak their case is; and if you are going to hold the State to their burden, then you need to see that they haven't met it.

One of the [State's] burdens is to show us what happened. Well, what happen[ed] was on tape. It was on tape. I say tape. DVD. But it's there for you to look at. Not only video but the audio. What he said it may be disputed about, well, the officer says he said this. What he said is on the video. You can see it. You can hear it. We look at them all the time. It's right there. You've probably seen them on TV. Top 100 car chases or whatever. You see the video from the squad car, and you look at it. Again, where is it at?

I want you to imagine if [defendant] had taken a video of what occurred that day and we came in and I'm in front of you and [he said] he destroyed it *** and then he gives his story about what happen[ed], can you imagine what the State would be saying if [defendant] destroyed the video of what occurred on that day? Can you just imagine how much [indignation] there would be that the evidence of the case has been destroyed?"

¶ 21    The jury found defendant guilty of driving without a registration light, driving while his license was revoked, and possession of methamphetamine.

¶ 22    On April 26, 2011, defendant filed a motion for a new trial, arguing, *inter alia*, the trial court erred in denying his motion to suppress.

¶ 23    Following a June 7, 2011, hearing, the trial court denied defendant's posttrial motion. The court then sentenced defendant as stated.

¶ 24    This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, defendant argues the trial court erred in denying his motion to suppress Ahrens' testimony. Specifically, defendant contends the court erred in its interpretation of section 14-3(h-15) of the Code (720 ILCS 5/14-3(h-15) (West 2010)).

¶ 27    The State concedes the trial court's interpretation of the statute was incorrect in that the statute required the police to keep the recording. The State further concedes the police violated the statute by destroying the recording. However, the State disagrees Ahrens' testimony should have been suppressed as a result.

¶ 28    The Illinois eavesdropping statute prohibits the use of an eavesdropping device to record all or part of any conversation unless all parties to the conversation consent or unless one party consents and prior judicial authorization is obtained. 720 ILCS 5/14-2(a)(1) (West 2010). Section 14-3 of the Code creates the following relevant exceptions to this exclusionary rule:

> "(h) Recordings made simultaneously with the use of an in-car video camera recording of an oral conversation between a uniformed peace officer, who has identified his or her office, and a person in the presence of the peace officer whenever[:] (i) an officer assigned a patrol vehicle is conducting an enforcement stop; or (ii) patrol vehicle emergency lights are activated or would otherwise be activated if not for the need to conceal the presence of law enforcement.
>
> For the purposes of this subsection (h), 'enforcement stop' means an action by a law enforcement officer in relation to enforcement and investigation duties, including but not limited to, traffic stops, pedestrian stops, abandoned vehicle contacts, motorist assists, commercial motor vehicle stops, roadside safety checks, requests for identification, or responses to requests for emergency assistance;
>
> (h-5) Recordings of utterances made by a person while in the presence of a uniformed peace officer and while an occupant of a police vehicle including, but not limited to[:] (i) recordings made simultaneously with the use of an in-car video camera and (ii) recordings made in the presence of the peace officer utilizing video or audio systems, or both, authorized by the law enforcement agency[.]" 720 ILCS 5/14-3(h), (h-5) (West 2010).

In August 2009, section 14-3 was amended to require the retention of recordings made under subsections (h) and (h-5). See Pub. Act 96-670, § 5 (eff. Aug. 25, 2009) (amending 720 ILCS 5/14-3 (West 2008)). Specifically, section 14-3(h-15) now requires the following:

> "Recordings made under subsection (h) [and] (h-5) *** shall be retained by the law enforcement agency that employs the peace officer who made the recordings for a storage period of 90 days, unless the recordings are *made as a part of an arrest* or the recordings are deemed evidence in any criminal, civil, or administrative proceeding and then *the*

*recordings must only be destroyed upon a final disposition and an order from the court.* Under no circumstances shall any recording be altered or erased prior to the expiration of the designated storage period. Upon completion of the storage period, the recording medium may be erased and reissued for operational use[.]" (Emphases added.) 720 ILCS 5/14-3(h-15) (West 2010).

Thus, the plain language of the statute provides the police have to keep a recording of a traffic stop for 90 days unless there was an arrest made, in which case, the recording has to be kept until the criminal case is over. We find support for such a reading in *People v. Kladis*, 2011 IL 110920, ¶¶ 31-32, 960 N.E.2d 1104, where the supreme court stated the following:

"In late 2008 our legislature mandated that Illinois State Police squad cars be equipped with recording equipment. 20 ILCS 2610/30(b) (West 2008) (Pub. Act 95-1009 (eff. Dec. 15, 2008)). The law specified that both video and audio must be captured (*id.*) and required that these recordings be maintained for a storage period of at least 90 days before being destroyed. 20 ILCS 2610/30(f) (West 2008).

The following year, the General Assembly clarified and broadened the production and preservation safeguards for police recordings. It established the general rule that when any law enforcement agency makes an in-squad video and audio recording in connection with either law enforcement or investigative duties, that recording shall be retained for a minimum period of 90 days. 720 ILCS 5/14-3(h-15) (West 2010) (Pub. Act 96-670 (eff. Aug. 25, 2009)). Significantly, the legislature has also mandated an extended period of storage for certain recordings. Where 'the recordings *** are made as a part of an arrest or *** are deemed evidence in any criminal, civil, or administrative proceeding' they cannot be destroyed except 'upon a final disposition and an order from the court.' *Id.* We note that this heightened protection is triggered either where, as here, an arrest occurred or where the recording is considered to be evidence in *any* criminal, civil or administrative proceeding. Significantly, the General Assembly placed no restriction on this latter factor, encompassing all proceedings." (Emphasis in original.)

¶ 29    While the trial court aptly discussed the statute's perceived lack of clarity regarding who has the authority to "deem" the recordings are evidence and when that determination might occur, the court did not discuss the other portion of the statute relating to "recordings made as a part of an arrest." Here, the State concedes the trial court erred in its interpretation of the statute's applicability and the police violated the statute by "recycling" the DVD. We agree. The recording in this case was made as part of defendant's arrest. As a result, the recording should have been retained until "a final disposition and an order from the court" issued. Contrary to the court's view, the plain language of the statute shows the legislature intended the police keep recordings when made as part of an arrest.

¶ 30    However, the trial court correctly found a violation of the statute does not require suppression as a remedy. We agree, as do the parties, the statute is silent as to *any* remedy for its violation. In fact, defendant concedes the statute does not prescribe a remedy for noncompliance. A statute is directory if the legislature fails to dictate a particular consequence for failure to comply with the provision. See *People v. Delvillar*, 235 Ill. 2d

507, 515, 922 N.E.2d 330, 335 (2009) (in the absence of a stated consequence a statute is directory and no particular consequence flows from noncompliance). *Cf. People v. Bonilla*, 170 Ill. App. 3d 26, 35, 523 N.E.2d 1258, 1264 (1988) ("mandatory intent is indicated where a statute prescribes the result that will occur if the specified procedure is not followed").

¶ 31    Here, defendant filed a motion to suppress Ahrens' testimony as his requested remedy for the statute's violation. "We apply a bifurcated standard of review when reviewing a court's ruling on a motion to suppress, reviewing a trial court's factual findings under a manifest weight of the evidence standard of review but applying a *de novo* standard of review to the ultimate question whether the evidence should be suppressed." *People v. Harper*, 2012 IL App (4th) 110880, ¶ 22, 969 N.E.2d 573 (citing *People v. Bonutti*, 212 Ill. 2d 182, 188, 817 N.E.2d 489, 492 (2004)). For the reasons that follow, we find the trial court's error in interpreting the statute was harmless where defendant was not prejudiced by the absence of the recording.

¶ 32    Notably, in this case, defendant did not argue during trial his rear registration light was functioning properly and the recording would have shown no probable cause existed for the initial traffic stop. Defendant also did not argue the recording would have shown the pipe was not found inside his vehicle. Further, defendant did not argue the recording would contradict Ahrens' testimony defendant mentioned the "flap" before Ahrens asked him about it. While defendant denied knowing the armrest opened, he did not dispute referencing the "flap" prior to Ahrens bringing it up.

¶ 33    Instead, defendant focused his argument on the knowing-possession element of the charge. However, knowledge is generally established through circumstantial evidence because it is not susceptible to direct proof. *People v. Hodogbey*, 306 Ill. App. 3d 555, 559, 714 N.E.2d 1072, 1076 (1999). Here, defendant did not show how the recording would have challenged the inference he knowingly possessed the methamphetamine found in his vehicle. In fact, defendant never testified he did not use methamphetamine. Instead, defendant testified he had never seen the pipe before, had just purchased the vehicle, and did not look inside the armrest. However, the jury did not find defendant's testimony credible. See *People v. Evans*, 209 Ill. 2d 194, 211, 808 N.E.2d 939, 949 (2004) (function of the jury is to assess the credibility of witnesses). We note, none of those statements could have been proved true by the recording.

¶ 34    Moreover, while Ahrens testified during direct examination about the traffic stop, he did not testify a recording had been made or what that recording showed. Instead, his testimony was limited to his subjective observations of the stop. During defendant's cross-examination of Ahrens, however, defendant's trial counsel was able to elicit the fact the police destroyed the recording of the stop. Our review of this testimony shows defense counsel's line of questioning was effective in challenging Ahrens' credibility. Further, during his closing argument, defendant's trial counsel argued the police improperly destroyed evidence and asked them to consider how they would view the situation if defendant had done the same. The absence of the recording did not significantly hinder defendant's ability to present a defense such that he was prejudiced. Thus, the trial court did not err in denying defendant's request to suppress Ahrens' testimony. Accordingly, the court's error in interpreting the statute was harmless.

¶ 35                              III. CONCLUSION

¶ 36        For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 37        Affirmed.