NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250187-U

NO. 4-25-0187

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 26, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Mercer County |
| WILLIAM A. DeWITT, | ) | No. 24CF37 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Matthew W. Durbin, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Knecht and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court remanded the cause with directions to the trial court to issue a written order accompanied by necessary findings of fact.

¶ 2   The State appeals from the trial court's order granting defendant, William A. DeWitt's, motion to suppress an overhear. For the reasons that follow, we remand the matter for the trial court to enter a written judgment, including factual findings, as specified in this order.

¶ 3                                I. BACKGROUND

¶ 4   In April 2024, the State charged defendant with first degree murder (720 ILCS 5/9-1(a)(1) (West 2024)) and drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2024)). Defendant subsequently filed a motion to suppress an overhear pursuant to section 108A-9 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/108A-9 (West 2024)). In February 2025, the trial court held a hearing on the motion.

¶ 5        At the hearing, Special Agent Walt Willis of the Illinois State Police testified he applied for an overhear in this case on January 25, 2024. Willis stated the petition was approved by Assistant State's Attorney Meeghan Lee of the Rock Island County State's Attorney's Office. On the same day, Willis presented the petition to Judge Peter Church at the Rock Island County Courthouse. Judge Church approved the use of the overhear, which was completed later that day.

¶ 6        Several days later, another officer delivered a digital recording of the overhear to Willis. Willis placed the recording inside a locked cabinet inside a secure building in East Moline, Illinois. The only individuals who had access to the cabinet were Willis and his supervisors. Willis delivered a copy of the recording to Judge Church on March 20, 2024. He did not recall summarizing the contents of the recording to Judge Church. Willis explained he did not return the recording until later in March 2024 because he was involved in a homicide trial in Henry County for most of February 2024.

¶ 7        Willis testified he was later told by Lee that Judge Church had listened to the recording and granted permission to use it. Willis confirmed he never received a court order directing him to seal the recording. Willis testified he listened to the recording live and at least one other time, so he would know if the recording was altered.

¶ 8        Lee testified she reviewed the petition with Willis before receiving final approval from Rock Island County State's Attorney Dora Villarreal. A copy of the petition, which was admitted into evidence, stated it was "duly authorized by Assistant States' Attorney of Rock Island County, Meeghan Lee." Lee testified it was "quite common" for the petition to be signed by an assistant state's attorney after receiving final approval from Villarreal. If Villarreal was unavailable, final approval was to be obtained from First Assistant Heidi Weller. Lee reiterated that she worked on the petition with Villarreal. When the State asked if she was aware that

Villarreal was out of the office during that time, Lee then asserted she went to Weller for authorization of the petition.

¶ 9　　　　　Lee testified notice to defendant was handled by the clerk's office or Villareal's paralegal. The State confronted Lee with a notice to defendant containing her signature. Lee then testified the notice was prepared by her legal assistant. The notice included a proof of service, signed by Lee, which stated Lee served a copy of the notice to defendant or defendant's attorney via hand delivery and/or electronic transmission. Despite this, Lee insisted she did not hand deliver or e-mail the notice to defendant, as this was the responsibility of her legal assistant.

¶ 10　　　　　Lee testified, once Judge Church approved the petition on January 25, 2024, she was no longer involved with the case. The State introduced an April 26, 2024, order which read, in part, "The Court upon listening to the testimony of Special Agent Walt Willis and being fully advised of the premises finds that the recordings were made within the authority of the order issued on January 25, 2024." In the bottom left corner of the page were the initials "MNL:jc." When asked to review the order, Lee confirmed that those were her initials to the left of the colon and her legal assistant's initials on the right. Lee denied telling Willis that Judge Church had granted permission to use the overhear as evidence. She asserted this was handled by Villarreal and her paralegal.

¶ 11　　　　　The trial court took judicial notice that the initial discovery disclosure to defendant was filed on June 3, 2024. The disclosure stated, in part: "The State has knowledge of an electronic surveillance of conversations to which the accused was a party, or of his premises. The same has been provided with this discovery." The disclosure included a proof of service signed by Mercer County State's Attorney Grace Simpson that certified the disclosure was hand delivered to defendant's attorney. The court also took judicial notice of a stipulation by the

parties, which stated (1) the recording was not played for Judge Church before he signed the April 26, 2024, order, (2) Villarreal was out of the office and unavailable during the time the petition for an overhear was requested and approved, and (3) Lee did not have authorization to approve overhears.

¶ 12　　　　On February 18, 2025, the trial court granted defendant's motion to suppress an overhear. The court found that "major errors" occurred during the investigation in this case. The court stated it had "serious issues regarding credibility of the testimony" presented at the suppression hearing and found that "the statute was not followed deliberately by certain people and that credibility issues are part of the Court's analysis."

¶ 13　　　　The trial court noted Lee claimed Villarreal approved the petition, which was later disproven, as Villarreal was out of the office and unavailable at that time. The court also noted Lee testified she did not personally deliver the notice to defendant, but she was later confronted with her signature on the notice and proof of service dated April 26, 2024.

¶ 14　　　　The trial court found, other than the statutory provisions pertaining to the petition, no other portion of the overhear statute was satisfactorily complied with. The court found the order requirement (725 ILCS 5/108A-5 (West 2024)) was violated because Judge Church signed the petition rather than issuing a separate written order, but this error did not warrant suppression because the violation was not deliberate and did not provide the State a tactical advantage.

¶ 15　　　　As to the remaining requirements, the trial court found the notice requirement (725 ILCS 5/108A-8 (West 2024)) and the sealing requirement (725 ILCS 5/108A-7 (West 2024)) were violated. The court further found the timing elements for compliance were not followed. Ultimately, the court concluded there were "too many errors herein to give confidence in the procurement, handling, and ultimate presentation of this evidence," which prejudiced

defendant and created an advantage for the State. No written order was filed.

¶ 16        On February 20, 2025, the State filed a timely certificate of impairment and notice of its intent to appeal.

¶ 17        This appeal followed.

¶ 18        II. ANALYSIS

¶ 19        On appeal, the State argues the trial court erred in granting defendant's motion to suppress an overhear. Specifically, the State alleges the court erroneously found certain sections of the overhear statute were violated. The State concedes other violations, but it maintains those violations were technical in nature and did not require suppression. The State also asserts the court's factual findings that the overhear statute was deliberately violated and that the State gained a tactical advantage were manifestly erroneous.

¶ 20        The procedures governing a defendant's motion to suppress an overhear are set out in section 108A-9 of the Code (725 ILCS 5/108A-9 (West 2024)). "Because Illinois citizens are entitled to be safeguarded from unnecessary governmental surveillance and other unreasonable intrusions into their privacy, the overhear statute must be strictly construed." (Internal quotation marks omitted.) *People v. Cunningham*, 2012 IL App (3d) 100013, ¶ 22. However, not all violations of the overhear statute require suppression. *People v. Ellis*, 122 Ill. App. 3d 900, 904 (1984). An overhear should be suppressed only when there is a failure to satisfy any of the statutory requirements that substantially and directly implement the legislative intent to limit the use of overhears. *Ellis*, 122 Ill. App. 3d at 904. The applicable test is whether (1) the particular procedure is a central safeguard in the legislative scheme to prevent abuses, (2) the purpose the procedure was designed to accomplish has been satisfied despite the error, and (3) the statutory requirement was deliberately ignored and, if so, whether the State gained a

tactical advantage. *People v. Nieves*, 92 Ill. 2d 452, 458-59 (1982).

¶ 21    This court applies a bifurcated standard of review when examining a trial court's ruling on a motion to suppress. *People v. Wachholtz*, 2013 IL App (4th) 110486, ¶ 31. Any findings of fact are reviewed under the deferential manifest weight of the evidence standard, whereas the ultimate question of whether the evidence should be suppressed is reviewed *de novo*. *Wachholtz*, 2013 IL App (4th) 110486, ¶ 31.

¶ 22    In ruling on the motion to suppress an overhear, the trial court stated, "[T]he statute was not followed deliberately by certain people and that credibility issues are part of the Court's analysis." Thus, the court clearly relied upon two separate factual determinations when ruling on defendant's motion, namely, that (1) the overhear statute was deliberately violated by certain individuals and (2) there were credibility issues with certain witnesses. However, the court never expanded upon its reasoning for either of these pivotal factual findings in issuing its ruling on defendant's motion.

¶ 23    We cannot defer to a trial court's factual findings or credibility determinations, as we are required to under the applicable standard of review, if we do not know the specifics of what those findings were. In a case such as this one, where there were two witnesses who testified at the suppression hearing and numerous alleged violations of the overhear statute, we cannot discern who the court was referring to based on its vague reference to "certain people." These findings are especially important for analyzing whether to suppress an overhear under the *Nieves* framework. The third part of this test asks the court to determine whether the overhear statute was deliberately violated, which, in this case, is dependent upon the believability of witnesses Lee and Willis, who at times gave conflicting testimony. This credibility determination is exclusively within the purview of the trial court as the trier of fact. See *People v. Reynolds*,

2016 IL App (4th) 150572, ¶ 30. As another example, the court made no indication as to whether it believed Lee when she asserted she received authorization from Weller to approve the petition. Because Lee's testimony was the only evidence presented on whether the authorization requirement (725 ILCS 5/108A-1 (West 2024)) was satisfied, proper resolution of this issue depends on whether Lee was credible.

¶ 24        Further complicating this court's review is that a written order relating to the suppression motion was not entered in this case. This court encourages our trial judges to draft written orders that set out their rationales for their decision so that we may defer to their factual findings and credibility determinations with confidence. Given the seriousness and complexity of the trial court's decision to grant defendant's motion to suppress, as the reviewing court, we cannot adequately analyze the issues on appeal by speculating as to the findings on which the trial court's decision relied.

¶ 25        Ultimately, we cannot proceed on the merits of this appeal without further clarification. Without these specific factual findings or credibility assessments, we are precluded from evaluating whether the overhear statute was violated and, if so, whether suppression is warranted under the *Nieves* test. Accordingly, we find it appropriate to remand this matter to the trial court so that it may enter a written judgment accompanied by the factual findings necessary to resolve the disposition on review. We express no opinion as to the credibility of the witnesses or what our interpretation of the facts might be.

¶ 26        On remand, we direct the trial court to enter a written order clarifying the following findings: (1) the credibility determinations that informed its ruling on the motion to suppress and (2) which sections of the overhear statute it found were violated. If the trial court finds a section of the overhear statute was violated, it should apply the three-part analysis under

*Nieves* for each individual violation and state with specificity which sections of the statute were deliberately violated. Upon entry of the written order, we leave it to the parties' discretion as to whether to file a new interlocutory appeal.

¶ 27                                       III. CONCLUSION

¶ 28          For the reasons stated, we remand this cause to the trial court for further proceedings consistent with this order.

¶ 29          Remanded with directions.