# Illinois Official Reports

## Appellate Court

---

### *People v. Bond*, 2016 IL App (1st) 152007

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KEVIN BOND, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-15-2007 |
| Filed | November 15, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-C6-60390; the Hon. Tommy Brewer, Judge, presiding. |
| Judgment | Order vacated; remanded with directions. |
| Counsel on Appeal | Shiller Preyar Law Offices, of Chicago (April Preyar, of counsel), for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Sari London, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State appeals from the trial court's order granting defendant Kevin Bond's motion to quash arrest and suppress evidence. The State argues that the trial court improperly granted defendant's motion to quash arrest and suppress evidence because a Blue Island police officer had the authority to exercise his police power in the city of Chicago after allegedly observing defendant illegally parked in the roadway in violation of Illinois statute.

¶ 2                                    BACKGROUND

¶ 3    Defendant was arrested and charged with three counts of driving under the influence (DUI). Prior to trial, defendant filed a motion to quash arrest and suppress evidence arguing that the arresting officer, a Blue Island policeman, lacked the authority to arrest him in Chicago. Defendant did not challenge any other aspects of his arrest. The following testimony was heard at a hearing on the motion.

¶ 4    Defendant testified that at approximately 2:45 a.m. on March 15, 2014, he was sitting in the driver's seat of his vehicle and was parked at 119th Street and Longwood Drive in Chicago. Defendant explained that 119th Street is the dividing line between Chicago and Blue Island. The north side of 119th Street is Chicago and the south side is Blue Island. Defendant was sending text messages on his phone when a Blue Island police officer approached him. He testified that he was not breaking any law at the time and had not been drinking that night.

¶ 5    Officer Chickerillo of the Blue Island police department testified that on March 15, 2014, at or around 2:45 a.m., he was on routine patrol on the Blue Island side of 119th Street when he observed defendant's vehicle stopped just over the white line at a stop sign, so that his car was partially in the westbound lane of 119th Street. According to Officer Chickerillo, he observed this "parking violation" from the Blue Island side of 119th Street. Officer Chickerillo explained that no parking is allowed on 119th Street, so based on the location of the vehicle, it was improperly parked on the roadway. Officer Chickerillo did not contact the Chicago police to inform them that defendant's car was illegally parked.

¶ 6    Officer Chickerillo continued his patrol and about 10 minutes later observed defendant's vehicle still in the same position. Concerned that defendant needed directions, he pulled his patrol car up next to defendant's car on the Chicago side of 119th Street. When he pulled up next to defendant's car, he observed that defendant had his eyes closed and his head tilted back against the headrest and appeared to be sleeping. Officer Chickerillo then pulled behind defendant's vehicle and noticed that defendant's brake lights were on. Officer Chickerillo testified that he then called Blue Island police for backup because he thought defendant's car might be in drive. He walked up to the driver's side window and observed that the vehicle was in drive. He then waited at the driver's side window for additional units to arrive. During the time Officer Chickerillo waited for additional units to arrive, defendant did not open his eyes or move.

¶ 7    Officer Chickerillo and Sergeant Haro knocked on the windows of the vehicle in an attempt to wake defendant. After a minute of knocking, defendant woke up and appeared to be disoriented and confused. Although the officers told defendant to put his car in park three times, defendant turned the car off while it was still in drive. Officer Chickerillo then told defendant to get out of the car. Defendant rolled down the window instead. At that time,

Officer Chickerillo noticed a strong smell of alcohol coming from the vehicle. Officer Chickerillo then reached inside the vehicle's window and manually unlocked and opened the driver's side door. Defendant exited the vehicle upon request but stumbled from his car across the street. Defendant's speech was slurred. Officer Chickerillo retrieved defendant from across the street, and, while physically holding him up, walked him back to his vehicle. Officer Chickerillo could smell alcohol on defendant's breath.

¶ 8 Defendant was too disoriented to respond to Officer Chickerillo's request for his identification. After patting defendant down, Officer Chickerillo found defendant's driver's license in his wallet and conducted a Law Enforcement Agencies Data System (LEADS) inquiry that showed defendant's license was suspended. Defendant was then arrested for driving with a suspended license. Officer Chickerillo identified defendant in open court.

¶ 9 Officer Chickerillo testified that he could not see what defendant was doing in his vehicle until he crossed over into Chicago and pulled up alongside defendant's vehicle. The officer testified that defendant's vehicle was not impeding traffic where it was stopped, there was no warrant for defendant's arrest, and none of the events involving defendant's arrest occurred in Blue Island. He further testified that he could have contacted the Blue Island police department and had them contact the Chicago police department.

¶ 10 After hearing the testimony and argument from both parties and the State's subsequent motion to reconsider, the trial court granted defendant's motion to quash arrest and suppress evidence stating that Officer Chickerillo did not have a legal basis for conducting the initial investigation because the officer only observed defendant commit a parking violation. The court found sections 7-4-7 and 7-4-8 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/7-4-7, 7-4-8 (West 2014)) to be in conflict with section 107-4(a-3)(2) of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/107-4(a-3)(2) (West 2014)) because "using the language from 107-4" the officer was required to "see him do a misdemeanor or felony in order to be able to act." The court stated that illegal parking was not a misdemeanor, so illegal parking would not trigger jurisdiction under section 107-4(a-3)(2).

¶ 11 The State filed a certificate of substantial impairment (see Ill. S. Ct. R. 604(a)(1) (eff. Dec. 11, 2014)) and a timely notice of appeal.

¶ 12 ANALYSIS

¶ 13 The State argues that the trial court's decision to grant defendant's motion to quash arrest and suppress evidence should be reversed because Officer Chickerillo had the authority to investigate a parking violation and make an arrest in Chicago. The question presented is whether a Blue Island police officer can enter the city of Chicago, an adjoining municipality, and exercise his police powers when he observes an illegally parked vehicle in violation of the Illinois Vehicle Code.

¶ 14 The State asserts that Officer Chickerillo's authority to effectuate an arrest in Chicago can be found in sections 7-4-7 and 7-4-8 of the Municipal Code, which authorizes extrajurisdictional arrests by police officers. The State also argues that even if this court finds sections 7-4-7 and 7-4-8 of the Municipal Code are inapplicable, the arrest made by Officer Chickerillo was a citizen's arrest authorized under section 107-3 of the Code of Criminal Procedure (725 ILCS 5/107-3 (West 2014)). Defendant responds that the trial court's ruling on the motion was correct.

¶ 15    The standard of review applicable to a ruling on a motion to quash arrest and suppress evidence is twofold. The trial court's factual findings and credibility determinations are upheld unless they are against the manifest weight of the evidence. *People v. Jones*, 215 Ill. 2d 261, 267-68 (2005). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *People v. Davis*, 352 Ill. App. 3d 576, 579 (2004). After the trial court's factual findings are reviewed, the court's ultimate legal rulings are reviewed *de novo*. *Jones*, 215 Ill. 2d at 268.

¶ 16    In ruling on the motion to quash arrest and suppress evidence, the trial court made no factual findings and did not assess the credibility of the witnesses. The court based its decision to grant the motion solely on the court's belief that Officer Chickerillo did not have the authority to enter Chicago and exert his police power. The State's argument here is centered on the interpretation of statutes governing police jurisdiction in municipalities. The legal question of police jurisdiction is an issue of statutory construction, which we review *de novo*. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11.

¶ 17    As we observed in *People v. Kirvelaitis*, 315 Ill. App. 3d 667, 669-72 (2000), there are several statutory provisions that authorize an officer to make an arrest outside his jurisdiction. A police district is defined as "[t]he territory which is embraced within the corporate limits of adjoining municipalities within any county in this State." 65 ILCS 5/7-4-7 (West 2014). "The police of any municipality in such a police district have full authority and power as peace officers and may go into any part of the district to exercise that authority and power." 65 ILCS 5/7-4-8 (West 2014). Reading sections 7-4-7 and 7-4-8 of the Municipal Code together, an officer may make an extrajurisdictional arrest in an adjoining municipality (*Harroun v. Addison Police Pension Board*, 372 Ill. App. 3d 260, 264-65 (2007)) that is within the same county as the officer's jurisdiction (*Kirvelaitis*, 315 Ill. App. 3d at 669-70). In addition, an officer may make an extrajurisdictional arrest if he is investigating an offense that occurred within the officer's jurisdiction and a temporary investigation or arrest outside the officer's jurisdiction is made pursuant to the initial investigation or if the officer, while on duty, becomes aware of the commission of a felony or misdemeanor violation under Illinois law. 725 ILCS 5/107-4(a-3)(1) (West 2014). Finally, an officer may make an arrest as a private citizen outside of his jurisdiction. 725 ILCS 5/107-3 (West 2014).

¶ 18    In this case, the alleged catalyst for Officer Chickerillo crossing into the city of Chicago to exert his police power was his observation of defendant's vehicle improperly parked on 119th Street. The record shows that Officer Chickerillo ticketed defendant for, among another things, improper parking on the roadway (625 ILCS 5/11-1301 (West 2012)), a penal statute classified as a petty offense (625 ILCS 5/11-202 (West 2012)).

¶ 19    While it is virtually unheard of that a police officer from a municipality adjacent to the city of Chicago would enter Chicago to investigate a petty offense parking violation, the plain and ordinary language of sections 7-4-7 and 7-4-8 of the Municipal Code gave Officer Chickerillo the "full authority and power" to go into any part of the police district that encompassed Blue Island (including Chicago) to exercise that "authority and power." 65 ILCS 5/7-4-8 (West 2014). We must give effect to the intent of the legislature, and the best indicator of that intent is the language of the statute, which we give its plain and ordinary meaning. *People v. McChriston*, 2014 IL 115310, ¶ 15. Based on the plain language of these statutory provisions, because he had the authority and power to exercise his police power in Blue Island, Officer Chickerillo also had the authority and power to exercise his authority and police power in

Chicago, an adjoining municipality. See *Kirvelaitis*, 315 Ill. App. 3d at 669-72; *Harroun*, 372 Ill. App. 3d at 264-65. The legislature had the opportunity to, but did not, qualify or limit the extrajurisdictional authority and power of police officers. Therefore, we find that under sections 7-4-7 and 7-4-8 of the Municipal Code, Officer Chickerillo had the authority to enter the city of Chicago when he allegedly observed a petty offense.

¶ 20    Defendant seems to argue that even if his arrest in the city of Chicago was proper under sections 7-4-7 and 7-4-8 of the Municipal Code, section 107-4(a-3)(2) of the Code of Criminal Procedure restricts officers from making arrests outside of their jurisdiction, even when the arrest occurs in the same county (*Kirvelaitis*, 315 Ill. App. 3d at 669-72) or in an adjoining municipality (*Harroun*, 372 Ill. App. 3d at 264-65) unless certain factors are present which warrant an officer's intrusion into another jurisdiction to make an arrest.

¶ 21    Section 107-4(a-3) provides:

> "Any peace officer employed by a law enforcement agency of this State may conduct temporary questioning pursuant to Section 107-14 of this Code and may make arrests in any jurisdiction within this State: (1) if the officer is engaged in the investigation of criminal activity that occurred in the officer's primary jurisdiction and the temporary questioning or arrest relates to, arises from, or is conducted pursuant to that investigation; or (2) if the officer, while on duty as a peace officer, becomes personally aware of the immediate commission of a felony or misdemeanor violation of the laws of this State; or (3) if the officer, while on duty as a peace officer, is requested by an appropriate State or local law enforcement official to render aid or assistance to the requesting law enforcement agency that is outside the officer's primary jurisdiction; or (4) in accordance with Section 2605-580 of the Department of State Police Law of the Civil Administrative Code of Illinois. While acting pursuant to this subsection, an officer has the same authority as within his or her own jurisdiction." 725 ILCS 5/107-4(a-3) (West 2014).

¶ 22    Recently, in *People v. Reynolds*, 2016 IL App (4th) 150572, this court considered whether section 104-7(a-3) of the Code of Criminal Procedure conflicts with section 7-4-8 of the Municipal Code. In finding that there was no conflict, we stated:

> "While defendant attempts to construct an argument that section 7-4-8 conflicts with the arrest statute, section 104-7(a-3) of the Criminal Procedure Code, we find no conflict. The arrest statute applies, as discussed below, to any jurisdiction in the State, whereas the Municipal Code provisions apply to extend the jurisdiction of police officers in a police district, defined as adjoining municipalities in the same county." *Id.* ¶ 19.

Section 107-4(a-3) "affords police officers jurisdiction to effect an arrest in *any* jurisdiction as long as one of the enumerated provisions applies." (Emphasis in original.) *Id.* ¶ 23.

¶ 23    Based on *Reynolds*, the fact that none of the factors outlined in section 107-4(a-3) were present to warrant Officer Chickerillo's intrusion into Chicago to arrest defendant is not fatal to the instant arrest. Officer Chickerillo had jurisdictional authority under sections 7-4-7 and 7-4-8 of the Municipal Code to arrest defendant in Chicago because Chicago is an adjoining municipality located in the same county (Cook) as Blue Island. Section 107-4(a-3) only restricts the officer's exercise of his police power beyond those boundaries (*id.*) and is therefore not relevant to the facts presented in this case.

¶ 24 Based on our decision on this issue, we need not consider whether defendant's arrest was a proper citizen's arrest pursuant to section 107-3 of the Code of Criminal Procedure (725 ILCS 5/107-3 (West 2014)).

¶ 25 As previously noted, the trial court made its decision solely on the issue of jurisdiction and made no credibility determinations or factual findings with respect to defendant's motion to quash arrest and suppress evidence. The court granted defendant's motion on a purely legal issue. As such, we vacate the order granting defendant's motion to quash arrest and suppress evidence and remand to the trial court for the court to reconsider its ruling on defendant's motion to quash and suppress after making factual findings and credibility determinations.

¶ 26                                        CONCLUSION

¶ 27 Based on the foregoing, we remand this cause to the trial court for reconsideration of its ruling on defendant's motion to quash arrest and suppress evidence.

¶ 28 Order vacated; remanded with directions.