# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2017 IL App (1st) 160025

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE BROWN, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-16-0025 |
| Filed | August 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-4949; the Hon. Clayton J. Crane, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Peter V. Bustamante and Claudia E. Sainsot, of Law Office of Peter V. Bustamante, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Joseph Alexander, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion.<br>Justices Harris and Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant George Brown was charged with aggravated battery to a police officer. After a bench trial, defendant was acquitted of committing that offense, but found guilty of resisting a police officer as a lesser-included offense. Newly discovered evidence caused the trial court to vacate the conviction for resisting a police officer and order a new trial on the resisting charge only. This time, defendant opted for a jury trial and was found guilty again for resisting a police officer.

¶ 2 Defendant raises a number of issues on appeal. We find that there was no violation of defendant's right to be free from double jeopardy and that the resolution of the issues in his second trial was not precluded by collateral estoppel. We also find that the trial court did not err when it denied defendant's motion to quash arrest. We do, however, find that defendant should have been recharged and that he was denied a fair trial because the trial court refused to give a jury instruction that was amply supported by the evidence. Accordingly, we reverse and remand.

¶ 3           BACKGROUND

¶ 4 Defendant George Brown was driving down a one-way street when a police car approached head-on and effectuated a stop of defendant's vehicle. Defendant got out of the car and ran. Officer Joseph Lopez exited his police vehicle from the passenger side and chased defendant down. Defendant was hit with a Taser four times, and then he was handcuffed. That is where the undisputed facts end.

¶ 5 The State charged defendant with aggravated battery to a police officer. The State claims, through Officer Lopez, that the officers were driving on Laramie Avenue[1] when, approaching the intersection with Quincy Street, Officer Lopez spotted a black SUV with its headlights turned off on Quincy Street. The officers turned their vehicle down Quincy Street, going the wrong way down the one-way street so that they were facing defendant head on. The officers situated their vehicle in front of defendant's vehicle to block its path, at which point both vehicles came to a stop. Then, defendant put his vehicle in reverse at an angle and traveled a few car lengths backwards before he could not go any further in reverse. The officers exited their vehicle and drew their weapons. Defendant did not comply with the officers' verbal commands, and defendant then exited his vehicle on foot and began to flee.

¶ 6 The State's case continued with Officer Lopez being in foot pursuit of defendant. When Officer Lopez got within a couple feet of defendant, defendant turned around, charged Officer Lopez, and struck the officer in the face. The two individuals struggled for a bit longer until other officers arrived. When the officers were trying to gain control of defendant, he was flailing and putting up a fight so Officer George Moussa deployed his Taser to try to subdue defendant. After the third time tasing defendant, Officer Moussa did a "dry stun" on defendant, meaning that the Taser was placed directly against defendant's body to stun him. At that point, the officers were able to handcuff him. Defendant was taken into custody and to the hospital per department procedures for when a Taser is deployed. Officer Lopez was also taken to the hospital and examined regarding the punch he received from defendant.

---

[1]In the first trial, Officer Lopez testified that the police were driving northbound on Laramie Avenue, and in the second trial he testified they were driving southbound.

¶ 7    Defendant was charged by information with aggravated battery to a peace officer. The State pled that defendant committed that offense, in that he committed a battery, intentionally causing bodily harm to the victim when he "struck Police Officer Lopez star #15739 in the face with a closed fist" while knowing Officer Lopez to be a police officer.

¶ 8    The version of events offered by defendant is strikingly different. Defendant claims that he was driving east on Quincy Street after picking up his friend Grover Tucker, who lived on that block. His headlights were on. All of the sudden, a vehicle approached them head-on going the wrong way down the one-way street. The occupants of the vehicle got out and pointed guns at him, yelling for him to get out of the car. Defendant, not recognizing that the people were police, panicked, got out of the car, and ran in the opposite direction—west down Quincy Street. Defendant claims that as he was trying to run away, he was knocked to the ground and someone began punching and choking him, and he was tased multiple times. He said that he never punched Officer Lopez. Defendant was arrested and taken to the hospital.

¶ 9    At the bench trial, although defendant was only charged with aggravated battery to a police officer, the court found him guilty of resisting arrest, a misdemeanor, but not guilty of aggravated battery to a police officer. Defendant was sentenced to 300 days in prison, the time he had already served. He did not appeal.

¶ 10    In the meantime, however, defendant's mother filed a complaint with the Chicago police department for police brutality because her son was tased four times. Defendant also filed a civil lawsuit for excessive force. During discovery in his civil case for excessive force, it was uncovered that a police observational device (POD) camera captured some of the events relevant to defendant's criminal case. The video shows the police car occupied by Officer Lopez turning from Laramie Avenue onto Quincy Street and approaching a vehicle head on. The vehicle has its headlights turned on.

¶ 11    Based on this video, defendant filed a petition to vacate his conviction. The basis for the petition was that defendant would have filed a motion to quash his arrest because, according to Officer Lopez's own testimony, the only reason the officers stopped defendant was because his headlights were not turned on. The trial court viewed the video and heard arguments from the parties. The trial judge explained, "I've had occasion to review that video. The lights are on, the officer is coming up the wrong way on a one-way street when he encounters him." The trial court vacated defendant's conviction and ordered a new trial.

¶ 12    With his conviction vacated, defendant filed a motion to quash arrest and suppress evidence based on the fact that it was an illegal arrest. According to defendant, the video showed that his headlights were on, so the only legal justification the officers claimed to have had for the arrest had been refuted. The trial court held an evidentiary hearing on the motion to suppress. At the suppression hearing, for the first time, Officer Lopez explained that when the officers turned onto Quincy Street, they actually encountered two black SUVs. He stated that they encountered one black SUV that looked similar to defendant's vehicle that had its headlights on, but they went around that vehicle to get to a second vehicle that was down the block and out of range of the POD camera that had its headlights off. The second black SUV, he testified, was defendant's vehicle. Defendant again testified and asserted that the vehicle in the video was his black SUV. Because the POD cameras scan the area and look in different directions, the video does not show the entire event. The trial court found the video to be inconclusive to establish that it was defendant's vehicle that had its headlights turned on.

¶ 13    The case was, therefore, headed toward trial again, this time before a jury. The State never amended the charging document under which defendant was only charged with aggravated battery to a police officer, even though defendant had already been acquitted of that offense. But since defendant was found guilty of resisting arrest, the State was set to proceed to trial for that offense—a misdemeanor for which the sentence was already discharged.

¶ 14    The State filed a motion *in limine* to preclude the admission of the POD video. The State argued that the only issue for the jury to decide was whether defendant resisted arrest and, thus, the video and the issue of whether defendant's headlights were turned on were irrelevant and would only confuse the jury. The trial court agreed and ruled that the video would not be admitted into evidence.

¶ 15    Defendant, meanwhile, moved to dismiss the case on the basis that the State never amended the information and the statute of limitations had run for the State to file a charge for resisting arrest. Defendant also argued that he was entitled to dismissal because the only act set forth in the information on which the charge against him was based was that he struck Officer Lopez in the face—a fact necessarily adjudicated in his favor when he was acquitted of aggravated battery of a police officer. The trial court denied the motion to dismiss.

¶ 16    At the second trial, the testimony was basically the same as the testimony adduced at the first trial. Instead of Officer Moussa testifying for the State, it was Officer Arturo Bracho, another officer on scene the night of the arrest. But there were no differences in their testimony material to this appeal. Again at the second trial, neither officer testified about encountering two vehicles when they turned onto Quincy Street. Defendant filed a motion for a directed verdict at the close of the State's case and renewed the motion after the defense presented its case. Defendant maintained that he could not be found guilty for the only charged crime—striking Officer Lopez in the face—because he had been acquitted of that offense in the first trial. He also argued that his right to a fair trial was violated because there were many facts introduced in the second trial that were beyond the scope of the crime charged in the information. Those motions were denied.

¶ 17    Defendant also requested a jury instruction on self-defense. Defendant maintained that, because there was a use of excessive force by the police, he was entitled to an instruction on self-defense under which the jury could find that defendant's actions were justified. The trial court refused that instruction. When it came time to instruct the jury, the instructions were that, "[t]he charge against the defendant in this case is contained in a document called the information." However, the jury was instructed on the elements of resisting arrest, not aggravated battery of a police officer. The jury instructions state that "[t]he defendant is charged with the offense of Resisting or Obstructing a Peace Officer."

¶ 18    During deliberations, the jury asked "What classifies use of force versus protective defense?" The jurors also sent a note that said "Please clarify mistake as to a matter of fact, give examples and being, feeling panicked at the moment whether it was police or not." The trial judge did not answer the questions, and instead told the jury to continue deliberating. The jury found defendant guilty of resisting arrest. There is no indication that there was a second sentencing hearing held. Defendant now appeals that conviction.

¶ 19    On appeal, defendant argues that (1) he was subjected to double jeopardy during his second trial for the same conduct, (2) collateral estoppel bars the relitigation of certain facts necessarily decided in the first trial, (3) resisting arrest is not a lesser included offense of aggravated battery under these circumstances, (4) a charge for resisting arrest is barred by the

- 4 -

statute of limitations, (5) the trial court should have granted the motion to quash arrest and suppress evidence, (6) the trial court improperly excluded the POD video, at a minimum for impeachment, (7) his due process rights were violated because the information did not match the crime of which he was convicted, and (8) he was entitled to the jury instruction he proposed on self-defense.

¶ 20                                    ANALYSIS

¶ 21     There are multiple standards of review in this case, shifting among the different issues. For example, where the trial court makes no factual findings that pertain to whether there was a violation of the double jeopardy clause, we review the issue *de novo*. *People v. Griffith*, 404 Ill. App. 3d 1072, 1079 (2010). However, we review a ruling on a motion to quash an arrest and suppress evidence to determine whether the trial court's findings and credibility determinations are against the manifest weight of the evidence, but we review the court's ultimate legal rulings *de novo*. *People v. Bond*, 2016 IL App (1st) 152007, ¶ 15. We will point out the attendant standard of review where necessary. Also, for ease of explanation and clarity, we address defendant's eight arguments in a different order than he presented them—sometimes combining issues and not fully addressing others.

¶ 22                    I. Double Jeopardy and Collateral Estoppel

¶ 23     Defendant argues that he was improperly subjected to double jeopardy when he was tried for a second time following his conviction being vacated. The fifth amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. The Illinois Constitution likewise provides that no person shall "be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, § 10.

¶ 24     Defendant argues at length that he was subject to double jeopardy because he "was tried twice based upon the same facts in the Information." But that is not what the double jeopardy clause protects against. The double jeopardy clause provides three categories of protection for a defendant: (1) protection against a second prosecution after an acquittal for an offense, (2) protection from a second prosecution after a conviction, and (3) protection against multiple punishments for the same offense. *People v. Gray*, 214 Ill. 2d 1, 6 (2005). None of those scenarios exist here. Additionally, when a defendant is successful in having his original conviction set aside based on a defect other than the sufficiency of the evidence, whether it be by direct or collateral attack, the conviction is nullified, and the defendant's right to be free from double jeopardy is not violated if he is retried. *People v. Crutchfield*, 353 Ill. App. 3d 1014, 1025 (2004) (citing *North Carolina v. Pearce*, 395 U.S. 711, 721 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)); see also 720 ILCS 5/3-4(d)(2) (West 2012) (a second prosecution is not barred if proceedings subsequent to the conviction result in the vacating of the conviction).

¶ 25     At his first trial, defendant was acquitted, based on the evidence, of aggravated battery of a police officer. So it is true that defendant could not be retried for that offense. *People v. Mink*, 141 Ill. 2d 163, 173-74 (1990). However, defendant was convicted of resisting arrest, so there is no prohibition against trying him for that offense again after the original conviction was vacated based on the discovery of new evidence—an outcome that could only benefit defendant.

¶ 26     Defendant also argues that collateral estoppel bars his second conviction because he was acquitted of the same conduct in the first case. Defendant focuses particularly heavily on the language of the charging document under which he was charged with aggravated battery to a police officer—the allegation that he struck Officer Lopez in the face. Defendant maintains that because he was acquitted of aggravated battery, he was necessarily acquitted of striking Officer Lopez in the face, and thus, he could not be convicted of striking Officer Lopez in the face in a second trial.

¶ 27     In criminal cases, collateral estoppel is a component of the double jeopardy clause. *People v. Krstic*, 292 Ill. App. 3d 720, 723 (1997). "[C]ollateral estoppel applies when: (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question; (2) there was a judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Id.*

¶ 28     For collateral estoppel purposes, defendant's view of the issue is too limited. He was not acquitted of the act of punching Officer Lopez. The trial court made no finding in that regard. The trial court merely found that the proof at trial warranted a conviction for resisting arrest rather than aggravated battery. Determining whether defendant resisted arrest by his action is not the same consideration as whether he committed aggravated battery. Compare 720 ILCS 5/12-3.05 (West 2012), with 720 ILCS 5/31-1 (West 2012). The trial court was not required to find that there was no punch in order to acquit defendant of aggravated battery. Trial judges and juries alike often convict on lesser included offenses whether it be for sympathy or avoiding other injustice. See *People v. Knaff*, 196 Ill. 2d 460, 476-77 (2001). We have no idea what the basis was for the court to find defendant not guilty of aggravated battery, but the judgment itself cannot be equated with the finding of a specific fact—that defendant did not punch Officer Lopez. See *People v. Jones*, 207 Ill. 2d 122, 140 (2003). Collateral estoppel did not bar the adjudication of the issues in the second trial.

¶ 29                       II. Motion to Quash Arrest

¶ 30     After discovering that there was a POD camera video showing some events relevant to this case, the video was the subject of a petition to vacate under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). At the first trial, Officer Lopez testified that "if [defendant] had his lights on, I would have never pulled him over." The trial court reviewed the POD video and, after hearing argument, stated "the lights are on," and vacated defendant's conviction. The parties proceeded on a motion to quash the arrest based on a lack of probable cause, which defendant now argues the trial court erred in denying.

¶ 31     At the hearing on the motion to quash the arrest, there were some significant revelations. At the first trial, Officer Lopez testified, "we were driving north on Laramie" and that he was in the passenger seat when he noticed the headlights were off on a vehicle driving east on Quincy Street. He testified that when the officers made that observation, they activated the lights on their police car. They drove westbound, the wrong way down Quincy Street, where they came face to face with defendant's car.

¶ 32     What the video shows is that the officers' vehicle clearly turned onto Quincy Street from traveling *south* on Laramie Avenue. The officers turn down the street and come head-on with a vehicle that looks like defendant's vehicle. The vehicle has its headlights *on*, and the officers' vehicle's emergency lights are turned *off*.

¶ 33        So, at the hearing on the motion to quash the arrest, after the POD video was discovered and for the first time, Officer Lopez testified that their police vehicle was traveling south on Laramie Avenue and that he was in the passenger seat. The officers' vehicle turned onto Quincy Street and confronted a black SUV with its headlights on, but they passed the vehicle by going around it and then they traveled halfway down the double block to confront the second black SUV—defendant's vehicle.

¶ 34        At the first trial, there was no testimony at all that the officers had to pass a vehicle with its headlights on when they turned on Quincy Street. Instead, the testimony at the first trial seemed to convey some immediacy—that they turned onto Quincy Street and confronted defendant's vehicle. Officer Lopez also testified at the first trial that Quincy Street is a "pretty narrow street" and there were cars "[parked on] both sides." Officer Lopez was impeached with his testimony from a deposition in the civil case that defendant filed against the police where the officer was asked about the possibility of his vehicle going westbound and passing a vehicle going eastbound in that location. The question was, "and so a car coming in the opposite direction could not get through if there's another car going eastbound, is that correct?" To which Officer Lopez responded "correct."

¶ 35        Also, and while the trial court did not have access to the testimony from the second trial when ruling on the motion to quash arrest (but it did at later stages like when presented with defendant's motion for a directed verdict), there was once again no mention by the officers of a second vehicle at the second trial. There was no mention by Officer Lopez of passing a vehicle on the narrow street with cars parked on both sides in order to get to defendant. The testimony at the second trial also gave off the impression of some immediacy in confronting the vehicle with no headlights on. Unlike at the hearing on the motion to quash arrest, the testimony reverted to that the officers "turn[ed] onto Quincy and we see the vehicle with no headlights on, our marked vehicle goes head on with that vehicle." Officer Lopez was asked, "Now, *when your car turned on Quincy*, again going the wrong way, when you confronted the vehicle George Brown—the black SUV that he was driving—*at any time* was there another car in between you two?" Officer Lopez responded "When we went head on with him, no, there was no car between us."

¶ 36        Officer Lopez's testimony from the first trial also seems more consistent with the spatial evidence observable from the video than does his testimony at the hearing on the motion to quash arrest. At the first trial, Officer Lopez testified that when they confronted defendant's vehicle, defendant reversed a couple of car lengths back before he was at an angle that he could not reverse any further. At the hearing on the motion to quash arrest, Officer Lopez testified that they did not even first confront defendant until halfway down a double block (which he testified is a quarter mile in length) and then defendant reversed a couple of car lengths back. However, when the POD camera video pans back around and shows where the police cruiser is stopped, the vehicle is just a short distance west of where it encountered the vehicle in the video with its headlights on. The police car is stopped just a couple car lengths from where it confronted the initial vehicle on Quincy Street, not several hundred feet further down the road as it would have been consistent with Officer Lopez's testimony at the hearing on the motion to quash arrest. The distance is readily determinable because of the cars parked on both sides of the street.

¶ 37        Officer Lopez's testimony from the first trial also seems more consistent with the temporal evidence observable from the video than does his testimony at the hearing on the motion to

quash arrest. Consider that, in the POD video, the second police vehicle that appears reverses off of Quincy Street and onto Laramie Avenue almost immediately after Officer Lopez's vehicle was face to face with the vehicle that had its headlights on. At the first trial, Officer Lopez's testimony was that they saw the vehicle with no lights on, turned onto Quincy Street, and confronted that vehicle. At the hearing on the motion to quash arrest, Officer Lopez testified that they had to go around one black SUV and travel several hundred feet down the block at which point they confronted defendant in a second black SUV. Officer Lopez then testified that defendant tried to reverse for a short time until he could no longer do so, at which time the officers exited their vehicle and gave defendant orders to "stop the car, park it, park it." Officer Lopez testified that then "*after a few minutes or so* he jumped out of—Mr. Brown jumped out of the driver's seat and proceeded running westbound on Quincy." Based on the video, there was not time for all of that to occur before the second vehicle reversed off of Quincy Street. That testimony likewise does not square with Officer Moussa's testimony from the first trial or with the mere seconds of the video before Officer Moussa's vehicle backed off of Quincy Street allegedly in response to a radio call that defendant was already fleeing on foot.

¶ 38    So there were a lot of considerations that militated in favor of quashing the arrest. The significant inconsistencies in the testimony, especially in how the narrative of the arrest evolved after the POD camera video was discovered, raise some significant red flags. Viewing the video in conjunction with all the testimony in the record, there are reasons to believe that the first vehicle the officers confronted was defendant's vehicle with its lights on and, therefore, that the officers lacked a legal basis to arrest defendant.

¶ 39    All that being said, the trial court heard the testimony, observed the witnesses, and found the video to be inconclusive. Under the manifest weight of the evidence standard, we are not to reverse a trial court's ruling just because we might have ruled differently. *In re S.K.B.*, 2015 IL App (1st) 151249, ¶ 28. We cannot say that a conclusion opposite to the one adopted by the trial court was "clearly evident" (*Bond*, 2016 IL App (1st) 152007, ¶ 15). It is true that there is not incontrovertible proof that defendant's vehicle is the vehicle in the video, and the video does not affirmatively disprove the officers' testimony. On appeal, defendant merely states reasons why the trial judge should not have believed Officer Lopez, but he did. The trial court heard both sides and found that defendant had not met his burden, and we cannot say that such a ruling constitutes reversible error.

¶ 40                                    III. The Charging Instrument

¶ 41    Defendant was charged with one count of aggravated battery to a police officer. The State pled that defendant committed that offense, in that he committed a battery, intentionally causing bodily harm to the victim when he "struck Police Officer Lopez star #15739 in the face with a closed fist" while knowing Officer Lopez to be a police officer. He was acquitted. But he was found to have resisted a police officer and convicted of that offense. His conviction for resisting a police officer was then vacated. He was never recharged with anything.

¶ 42    The State claims that there is no issue with the charging instrument because defendant was convicted of a lesser-included offense of resisting arrest. The State relies on a few cases for the general and accepted proposition that, although a person cannot be convicted of an offense that he has not been charged with committing, he may be convicted of an offense not expressly

included in the charging instrument if that offense is a lesser-included offense of the crime expressly charged. *Knaff*, 196 Ill. 2d at 472.

¶ 43    Under the circumstances in this case, resisting arrest is a lesser-included offense of aggravated battery of a police officer. See *People v. Sanchez*, 2014 IL App (1st) 120514, ¶ 23. The *Sanchez* case is directly on point for resolving this issue. Illinois courts use the "charging instrument approach," under which the court examines the indictment (or the information in this case) and determines whether the factual allegations provide a "broad foundation" or "main outline" of the lesser offense. *Id.* ¶ 20. If the charging instrument describes the lesser offense, the court then considers whether the evidence at trial sufficed to uphold a conviction on the lesser offense. *Id.*

¶ 44    A person is guilty of the offense of resisting a peace officer if the person "knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity." 720 ILCS 5/31-1(a) (West 2012). Allegations in the information that defendant knowingly struck what he knew to be a police officer in the face broadly defines the offense of resisting that police officer, and the testimony lined up with the allegations. *Sanchez*, 2014 IL App (1st) 120514, ¶¶ 22-27; compare 720 ILCS 5/12-3.05 (West 2012), with 720 ILCS 5/31-1 (West 2012). So those principles explain the validity of defendant's *first* conviction for resisting arrest.

¶ 45    However, what the State does not adequately explain is the propriety of never recharging defendant after he was acquitted of the only charged offense and its course of then proceeding to trial on an uncharged offense. Defendant never received formal notice of what the State would attempt to prove or convict him of at the second trial. A defendant cannot be prosecuted for charges that are not brought by grand jury indictment or pursuant to a preliminary hearing. *People v. Stafford*, 325 Ill. App. 3d 1069, 1074 (2001). After his acquittal for aggravated battery, and in light of the new evidence that caused his conviction for resisting arrest to be vacated, defendant should not have been prosecuted under a stale charging instrument that arguably did not meet even the lowest standards required. See *People v. Abrams*, 48 Ill. 2d 446, 459 (1971). Defendant was forced to defend himself against a charge that was not even pending against him at the time of his jury trial. Neither party points us to precedent where the situation is the same as the one presented. Without deciding whether the issue constitutes reversible error, it seems apparent that due process would demand more.

¶ 46    It is not just that defendant was convicted of an offense with which he was never charged; he *went to trial* only charged with an offense that he could never be convicted of committing. After defendant's conviction was vacated, there was really no pending charge against him. The only criminal charge that ever existed was for aggravated battery of a police officer, and there was a final judgment on that charge—acquittal. It was a charge on which the State could never have secured a conviction. Generally, a court cannot permit a defendant *to be tried* on charges that are not brought against him. *Stafford*, 325 Ill. App. 3d at 1073 (citing *Stirone v. United States*, 361 U.S. 212, 215-17 (1960)).

¶ 47    In response to defendant's motion to dismiss the information, even the State acknowledged the need for action. The State instructed the court that "[t]he physical copy of Count 1 of the Information in the court file needs to be amended in the same manner as the Clerk's records to reflect the Court's finding of the lesser included offense of 'Resisting.' " However, the information was never amended, and defendant was never recharged. The State also proposed an allegation to be used in the information that would have materially changed the pleading to

state that defendant "knowingly resisted or obstructed a peace officer's performance of any authorized act within his official capacity" by striking Officer Lopez. The charging document was never so amended, and defendant was never charged under the proposed language. The State also proposed amending the statutory citation for the offense charged in the information. That was never done.

¶ 48    Regardless of the State not amending the charging document or recharging the defendant, the court instructed the jury as if defendant had been charged with the crime he was on trial for committing, even though he had not. The jury instructions state that "[t]he defendant is charged with the offense of Resisting or Obstructing a Peace Officer. The defendant has pleaded not guilty." That was untrue because defendant was never arraigned on that charge. The instructions go on to state that "[t]he charge against the defendant in this case is contained in a document called the information. This document is the formal method of charging the defendant and placing the defendant on trial. It is not any evidence against the defendant." It is unclear what charging document was provided to the jury, but it obviously was not one under which defendant had ever actually been charged. The State treated the charging document as though it was a mere technicality that was dispensable. Because the error discussed below (*infra* part IV) is a reversible error, we do not need to decide whether the failure to recharge defendant before taking him to trial on an uncharged offense would be grounds for reversal, but it sure seems that way. The interests of justice would clearly have been better served by defendant being charged for the offense he was being prosecuted for committing.

¶ 49                                IV. Jury Instructions

¶ 50    Defendant also argues that the trial court erred when it denied him the right to have the jury instructed on the use of excessive force, which would have allowed it to consider self-defense. The question of whether sufficient evidence exists in the record to support the giving of a jury instruction is a question of law subject to *de novo* review. *People v. Washington*, 2012 IL 110283, ¶ 19.

¶ 51    The use of excessive force invokes the right of self-defense. 720 ILCS 5/7-1(a) (West 2012). Hence, an instruction on self-defense is required in a resisting arrest or battery case when the defendant has presented some evidence of excessive force on the part of the arresting officer. *People v. Sims*, 374 Ill. App. 3d 427, 432 (2007). Only a "slight amount" of evidence is necessary to justify giving an instruction. *People v. Haynes*, 408 Ill. App. 3d 684, 690 (2011). The trial court erred when it refused to give this instruction.

¶ 52    The only crime defendant was accused of committing at the outset of his interaction with the officers was that he did not have his headlights on. Officer Lopez's own testimony was that when they stopped defendant after he tried to back away, four officers got out of the vehicle and weapons were drawn. He did not remember if he identified himself as a police officer. He testified that defendant fled and punched him and that four officers were amid the scuffle, but they had to tase defendant four times to subdue him.

¶ 53    Defendant meanwhile testified that he did not know the people who pulled up in front of him were police officers. When the people got out of their car and pulled out weapons, he was scared so he got out of his car and ran. When one of the people caught up to defendant and tackled him, the person started punching him in the head and choking him. Defendant claims that he was resisting in response to that violence—he balled up and covered his head to avoid being hit. Then he was tased four times. To accept the State's position on this issue, we would

be required to dismiss defendant's testimony entirely and accept the officers' testimony entirely. Because if you give *any* credence to defendant's testimony, which the trial court was required to do at the jury instruction phase in a case of contested credibility, defendant was entitled to an instruction on self-defense where any resisting that he may have done could have been the product of the violent confrontation.

¶ 54 Moreover, and while not determinative, defendant's position must have appealed to the jurors in some way because they asked "What classifies use of force versus protective defense?" The jurors also sent a note that said "Please clarify mistake as to a matter of fact, give examples and being, feeling panicked at the moment whether it was police or not." This is not just an intellectual exercise. The jury clearly gave some consideration to the use of force and defendant's rights in such a situation, yet they were prevented from having an instruction that would have directly addressed the issue. There was sufficient evidence in the record to support instructing the jury on self-defense and not having it deprived defendant of a fair trial. *People v. Ayers*, 331 Ill. App. 3d 742, 754 (2002).

¶ 55                          V. Admissibility of the POD Camera Video

¶ 56 Defendant argues that the trial court erred when it prevented him from introducing the POD camera video at trial. However, a defendant is not entitled to relitigate the issues raised in his motion to quash arrest. Where a defendant makes no offer of proof as to exceptional circumstances or new evidence, he has no right to relitigate the substance of his pretrial motion to quash arrest before a jury or to an additional hearing on a subsequent motion to quash arrest. *People v. Mathis*, 55 Ill. App. 3d 680, 685-86 (1977). It was clear from the questions defense counsel asked and from the arguments made during sidebars that it was counsel's intention to insinuate to the jury that defendant's arrest was without probable cause. Defendant was not entitled to admit the video for that purpose.

¶ 57 The video could potentially be used for impeachment purposes. However, there was nothing in the video that actually impeached any of the testimony offered by Officer Lopez, and the video addresses an issue distinct from the crime for which defendant was being tried. See *People v. Abrams*, 260 Ill. App. 3d 566, 579 (1994) (contradictory evidence may not be offered if it is merely collateral to the issues in the case). In addition, the State was correct when it argued that the video could confuse jurors about the issues to be decided, especially in light of the intimations made by defense counsel aimed at prodding the issue of whether the officers acted wrongfully and without probable cause when they stopped defendant. So the trial court did not abuse its discretion when it prohibited defendant from introducing the POD camera video. However, if the case is retried and there is testimony subject to impeachment by the content of the POD camera video, the video might be admissible for that purpose. The trial judge will have to exercise discretion to rule on that issue should the situation come to pass.

¶ 58                                    CONCLUSION

¶ 59 While our precedent demands that we remand this matter for a new trial based on the above-asserted problems with defendant's prosecution (*Ayers*, 331 Ill. App. 3d at 754), we urge the State to consider whether retrial in this case is really worthwhile. Defendant can only be recharged with a misdemeanor and his sentence has already been discharged. This opinion is not a vindication of the defendant in any way, but it is clear that there are a number of problems with the case. In any event, we reverse defendant's conviction and remand the case

for further proceedings.

¶ 60        Reversed and remanded.