2021 IL App (1st) 210096-U

SECOND DIVISION
December 7, 2021

No. 1-21-0096

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 88 CR 18817-01 |
| | ) | |
| JAMES MARSHALL, | ) | |
| | ) | Honorable Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the trial court's order denying defendant's motion to dismiss an indictment.

¶ 2    Defendant James Marshall was convicted of aggravated criminal sexual abuse and first-degree murder. Following defendant's conviction, evidence of a pattern of police misconduct relating to the same investigators involved in defendant's case came to light. Defendant succeeded in having his convictions vacated based on allegations of torture and coercive interrogation.

¶ 3    After defendant's convictions were vacated, the State revealed its intention to retry him for the murder. Defendant has served the full sentence imposed in the case, and he argues that he cannot now be retried for the same conduct giving rise to his now-vacated convictions. To that end, defendant filed a motion to dismiss the indictment. The trial court denied the motion to dismiss the indictment, and defendant now appeals. We affirm.

¶ 4                                    BACKGROUND

¶ 5    On November 7, 1988, the body of a 14-year-old girl, Theresa Quinn, was found in an alley. She had been murdered by strangling. Defendant James Marshall was arrested that same day. After a lengthy interrogation, defendant confessed to sexually assaulting and murdering Theresa Quinn. Theresa Quinn was the daughter of defendant's ex-wife, and defendant was the last known person to be with Theresa Quinn before she died.

¶ 6    Defendant moved to suppress the written confession that the State intended to offer at trial, arguing that the confession was not voluntary. Defendant claimed that the officers who were interrogating him beat him and threatened to throw him out of a window during the interrogation. The trial court denied defendant's motion to suppress the confession. Defendant was tried, and he was convicted of aggravated sexual abuse and first-degree murder. He was sentenced to concurrent terms of 60 years and 7 years in prison. Defendant's conviction was affirmed on appeal.

¶ 7    In the years after defendant's conviction, the abuse and coercive interrogation tactics of the officers under the command of Jon Burge came to light. Burge and his subordinates were alleged to have suffocated suspects with plastic bags, electrocuted suspects until they lost consciousness, and pointed guns at the heads of suspects, among other illegal tactics. Defendant

was interrogated at Area 3 police headquarters, and Area 3 was under the command of Burge at the time of defendant's interrogation.

¶ 8    Following the widespread revelations of misconduct by Burge and the other officers, the circuit court appointed a special master to investigate and identify convicted persons with valid claims of torture inflicted at the hands of Burge and his subordinates. Defendant was identified by the special master as meeting the criteria to receive *pro bono* legal counsel to assist him in litigating his allegations that his confession was not voluntary. With the assistance of appointed counsel, defendant filed a postconviction petition in 2017 to present his claims of torture and a coerced confession.

¶ 9    In adjudicating defendant's postconviction claims, the circuit court found that defendant "made a substantial showing that the outcome of his suppression hearing likely would have differed" if the evidence of the pattern of abusive police tactics under Burge had been presented. The circuit court vacated defendant's convictions and ordered a new suppression hearing and, if necessary, a new trial. The State appealed the trial court's order that vacated defendant's convictions, and we affirmed (*People v. Marshall*, 2019 IL App (1st) 190441-U (Unpublished Order under Supreme Court Rule 23 (December 31, 2019)).

¶ 10    The State continues to maintain that defendant's confession was voluntary and that he is guilty of Theresa Quinn's murder. The State communicated its intention to proceed with the new suppression hearing that was ordered by the circuit court when it ruled on defendant's postconviction claims. In response, defendant filed a motion to dismiss the indictment that is currently pending against him. Defendant believes that the charges against him should be dismissed because his conviction was vacated and because he has served the full prison sentence

handed down by the court in this case. The trial court denied defendant's motion to dismiss the indictment and defendant filed this appeal.

¶ 11                                   ANALYSIS

¶ 12     Defendant argues that he is entitled to the dismissal of the indictment—that the charges against him should be dismissed. In essence, defendant argues that he should not be retried for the murder of Theresa Quinn and that the prosecution should now end. In support of that argument, defendant points out that he has fully served the sentence handed down in the case.[1] Defendant contends that because the State cannot further punish him, any further prosecution is a "useless act." Defendant also contends that any further prosecution in this case is not "equitable nor productive," and he urges us to reverse the trial court's order and dismiss the pending indictment against him.

¶ 13     The standard of review for a circuit court's decision on a motion to dismiss an indictment depends on the nature of the motion to dismiss. When the defendant seeks the dismissal of an indictment for a legal reason, such as that the indictment is untimely (*People v. Macon*, 396 Ill. App. 3d 451, 454 (2009)) or for a denial of due process (*People v. Reimer*, 2012 IL App (1st) 101253, ¶ 27) we review the circuit court's decision *de novo*. However, when a motion to dismiss an indictment presents both questions of law and questions of fact, we review the legal ruling *de novo*, and we review the finding of fact to determine whether it is against the manifest

---

[1] Defendant was sentenced to 60 years in prison when he was sentenced in 1991. However, with day-for-day credit, defendant has discharged the terms of his sentence. Defendant's sentence was imposed before the Truth in Sentencing Act was passed to require certain sentences to be fully served without day-for-day credit, such as sentences imposed for murder convictions. See 730 ILCS 5/3-6-3(a)(2)(i) (West 2020); *People v. Spaulding*, 2020 IL App (1st) 172269-U, ¶ 25.

.

weight of the evidence. *People v. Wunderlich*, 2019 IL App (3d) 180360, ¶ 9; *People v. Soskin*, 2021 IL App (2d) 191017, ¶ 27.

¶ 14    We begin with defendant's claim that further prosecution in this matter subjects him to double jeopardy. Defendant asserts that further prosecution "would 'effectively expose' [him] to double jeopardy, in violation of his due process rights, and would constitute a miscarriage of justice."  Defendant maintains that "subjecting [him] to continued prosecution for the same conduct for which he was convicted, sentenced, and served all of his time would violate [his] Constitutional right to be free from being prosecuted twice for the same crime."

¶ 15    The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. Similarly, article I, section 10, of the Illinois Constitution of 1970 provides that no person shall "be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, § 10. The prohibition against double jeopardy protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *People v. Henry*, 204 Ill. 2d 267, 283 (2003) (quoting *People v. Placek,* 184 Ill. 2d 370, 376–77 (1998)). Defendant's claim meets none of those criteria.

¶ 16    As we have observed on several prior occasions, when a conviction is vacated for constitutional reasons, a defendant is not improperly subjected to double jeopardy if he is retried for the same offense. See *People v. Williams*, 279 Ill. App. 3d 22, 25 (1996); *People v. Brown*, 2017 IL App (1st) 160025, ¶ 24; 720 ILCS 5/3-4(d)(2) (West 2020); see also *People v. Crutchfield*, 353 Ill. App. 3d 1014, 1025 (2004) ("A well-recognized principle of constitutional jurisprudence is that when a defendant voluntarily seeks to have his original conviction set aside

and is successful, it is as though the slate has been wiped clean and the conviction is wholly nullified, and a defendant is not placed in double jeopardy at a retrial." (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Defendant's original conviction in this case has been done away with, and defendant is not entitled to a dismissal of the indictment based solely on the fact that the State has insisted that intends to try defendant again for the murder. The vacating of defendant's conviction is not tantamount to an acquittal, nor is it clear at this stage that there is insufficient evidence to prove defendant's guilt.

¶ 17    Defendant suggests that the outcome of the double jeopardy analysis should be different in this case because he has already served the entire sentence brought about by the conviction. Defendant principally relies on two cases to support his argument: *People v. Turner*, 325 Ill. App. 3d 185 (2001) and *People v. Robinson*, 187 Ill. 2d 461 (1989). We analyze those cases in turn.

¶ 18    In *People v. Turner*, 325 Ill. App. 3d 185 (2001), a defendant pled guilty to two counts of predatory sexual assault of a child. He went to prison and did "nothing to undo the two convictions that warranted his imprisonment. No court of law has ever overturned them." *Id*. at 186. As the defendant was about to be freed from prison for fulfilling his sentence, new arrest warrants were issued backed by criminal charges for the same criminal conduct that sent him to prison. *Id.* Because the Illinois Supreme Court had found the predatory criminal sexual assault of a child statute unconstitutional, the prosecutor in *Turner* believed the defendant could be charged under another statute and tried for the same criminal conduct again. *Id*. at 187. The State even seemed determined to seek additional imprisonment for the defendant. *Id*.

¶ 19    The court in *Turner* held that further prosecution would violate double jeopardy.  The court noted that defendant's conviction under the statute was not affected by the decision in two

cases where defendants argued the statue was unconstitutional. The court held "[w]hen the supreme court declared Public Act 89-428 unconstitutional, the declaration's legal effect was to render the legislation void *ab initio*-that is, as if it never existed. However, the supreme court's finding did not rewrite history. Turner's two convictions under the act still existed, albeit subject to legal challenge. Turner was prosecuted under a presumptively valid law. At the time that he entered his guilty pleas, it fully empowered the trial court to accept them. It also empowered the trial judge to impose punishment as a result of those guilty pleas. Indeed, the convictions were obtained through a sound and reliable process by a court of law authorized to act." *Id.* at 190. Since Turner did not challenge his convictions, they remained in place and further prosecution was barred.

¶ 20    *Turner* has almost nothing in common with this case. As is stated repeatedly in *Turner*, the defendant in that case was fully willing to leave his convictions intact to avoid any further prosecution, and the convictions therein were still in place. See *id.* at 186, 187, 188, 189, 190, 191. Here, defendant already has had the convictions vacated on his own initiative and he is resisting the State's effort to have the convictions reconstituted. Accordingly, there is no conviction in place as a bar to further prosecution.

¶ 21    In *People v. Robinson*, 187 Ill. 2d 461 (1989), the Illinois Supreme Court took up three cases in which the defendants were convicted but then died while their direct appeals were pending. *Id.* at 462. The appellate court had ordered that the appeals of those deceased defendants be dismissed, but the appellate court declined to order that the convictions be voided. *Id.* The Illinois Supreme Court explained that when a defendant dies while his direct appeal is pending, the appeal must be dismissed *and* the conviction must be voided. *Id.*

¶ 22 Again, the case cited by defendant, *Robinson*, has almost nothing in common with this case. Defendant is still alive. Defendant's current challenge has nothing to do with the right of a deceased defendant to have a conviction voided where that defendant is prevented the opportunity to vindicate himself on appeal due to his death. *Robinson* does not apply to the question of whether a living defendant can be retried for a crime after he is successful in having his original conviction vacated.

¶ 23 Defendant focuses on a statement in *Robinson* in which the supreme court explains that "the purpose of criminal prosecutions is to punish the defendant; continuing criminal proceedings when the defendant is dead is a useless act." *Id*. at 463 (quoting *People v. Mazzone*, 74 Ill. 2d 44, 46 (1978)). Defendant remarks that further prosecution in this case is "a useless act" because defendant cannot be punished any further for the crime at issue in this case. Defendant also relies on our supreme court's decision in *People v. Campbell*, 224 Ill. 2d 80 (2006), but rather than aiding his argument, *Campbell* explains why defendant's challenge fails.

> "At the outset, we note that defendant has fully discharged the sentenced imposed in this case. This is of no consequence, however, as this court has previously held that, while the completion of a defendant's sentence renders moot a challenge *to the sentence*, it does not so render a challenge *to the conviction*." *Campbell*, 224 Ill. 2d at 83 (2006) (citing *In re Christopher K.*, 217 Ill. 2d 348, 359 (2005)) (emphases added).

The issues presented on the motion to dismiss the indictment is whether defendant can potentially be retried and convicted. Sentencing and punishment are not at issue. There are myriad valid government and societal interests at stake that do not render further prosecution in this case a "useless act." Despite the one sentence defendant emphasizes from *Robinson*, there are other valid purposes for criminal prosecutions aside from punishing a convicted defendant.

¶ 24     We spoke to the same question presented in this appeal in *People v. Vazquez*, 2011 IL App (2d) 091155 (petition for leave to appeal denied, 962 N.E. 2d 488 (Nov. 30, 2011)). In *Vazquez*, the defendant had served his full sentence and then succeeded in having his convictions vacated because the trial court failed to properly admonish him before letting him represent himself at trial. The defendant in that case argued that the proper remedy was to vacate his convictions without a retrial because he had already served his sentence. We rejected the defendant's argument and explained both the legal and rational bases for allowing a defendant to be retried following the vacatur of his convictions. *Id*. at ¶¶ 19-21; see also *id*. at ¶¶ 35-37 (McLaren, J., specially concurring).

> "There is nothing inequitable in allowing the State the opportunity to obtain convictions for wrongdoing, even if the court is ultimately unable to impose any additional penalty. A criminal conviction means something. Its presence in a criminal history has value to the State in its role as prosecutor. The presence or absence of a criminal conviction may be a factor in charging a potential defendant. It may impact whether a plea agreement is offered and certainly will impact the nature of the offer. A prior conviction may be used in aggravation in a future sentencing hearing without placing upon the State the additional burden of producing a minor or other witness to testify." *Id.* at 21.

¶ 25     The State has explicitly confirmed that it is not seeking any additional sentencing in this case, but merely seeks to secure a conviction for the murder of Theresa Quinn. Among other worthy and productive justifications for seeking a conviction in this case, the citizens of Illinois and the victim's family have an interest in holding someone responsible for the young girl's murder. Defendant maintains his innocence. He claims that he was "framed for a murder he did

not commit." While the State has not validly proved that defendant committed the murder in this case, defendant has likewise not validly proved that he was framed or that his confession was coerced. Those questions remain to be answered: either in this case or potentially in collateral innocence proceedings. In any event, the State is not prohibited from seeking to secure a conviction for the murder of Theresa Quinn following the vacatur of defendant's conviction, and defendant has failed to demonstrate that the circuit court erred when it denied his motion to dismiss the indictment.

¶ 26                              CONCLUSION

¶ 27    Accordingly, we affirm.

¶ 28    Affirmed.